

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-26-2003

# USA v. Givan

Precedential or Non-Precedential: Precedential

Docket 01-2788

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"USA v. Givan" (2003). *2003 Decisions*. Paper 767.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/767

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed February 26, 2003

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 01-2788 and 01-2793

UNITED STATES OF AMERICA

v.

YUL DARNELL GIVAN,

Appellant in No. 01-2788

UNITED STATES OF AMERICA

v.

WAYNE TORRENCE,

Appellant in No. 01-2793

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Crim. No. 99-00215)
District Judge: Honorable William J. Nealon

Argued November 8, 2002

BEFORE: MCKEE and GREENBERG, Circuit Judges,
and LIFLAND, District Judge*

(Filed: February 26, 2003)

_____

* The Honorable John C. Lifland, Senior Judge of the United States
District Court for the District of New Jersey, sitting by designation.

Richard H. Morgan, Jr. (argued)
47 North Saginaw Street
Pontiac, MI 48342

 Attorney for Appellant
Yul Darnell Givan

Jeffery A. Taylor (argued)
17515 W. Nine Mile, #720
Southfield, MI 48075

 Attorney for Appellant
Wayne Torrence

Thomas A. Marino
United States Attorney

Christopher H. Casey (argued)
Assistant United States Attorney
Office of the United States Attorney
235 North Washington Avenue
P.O. Box 309
Federal Building, Suite 311
Scranton, PA 18510

  Attorneys for Appellee

OPINION OF THE COURT

GREENBERG, Circuit Judge.

This criminal case comes on before this court on appeals from judgments of conviction and sentence entered June 25, 2001. A jury convicted defendants-appellants Yul Darnell Givan and Wayne Torrence on one count of conspiring to distribute and possess with intent to distribute in excess of 100 grams of heroin in violation of 21 U.S.C. SS 846, 841(a)(1), and 841(b)(1)(B) and one count of possession with intent to distribute in excess of 100 grams of heroin in violation of 21 U.S.C. SS 841(a)(1) and 841(b)(1)(B) and 18 U.S.C. S 2.

On appeal, both defendants argue that the district court should have granted their motions to suppress the heroin seized from the vehicle the Pennsylvania state police

2

stopped which Torrence had been driving and in which Givan had been a passenger. They argue in this regard that Torrence did not freely and voluntarily give his consent for the search.

Givan argues that Trooper Jeffrey Taylor violated his Fourth Amendment rights when he continued to question the vehicle's occupants after the initial reason for the stop had been satisfied. Moreover, he contends that the district court erred when it applied Fed R. Evid. 404(b) to allow evidence that Givan had been convicted of a felony drug offense in Des Moines County, Iowa, on January 25, 1993. Finally, he contends that the court erred when it allowed Darryl Morgan to testify as to his drug purchases from the defendants as Givan contends that Morgan's testimony was not relevant to the conspiracy offense charged and was inadmissible under Fed. R. Evid. 404(b).

Torrence contends that his sentence should be vacated because the district court clearly erred in calculating his total offense level in making findings that he was involved in the distribution of between one and three kilograms of heroin and that he possessed a firearm in relation to drug trafficking. Torrence also makes an ineffective assistance of counsel claim, arguing that when deciding to take the case to trial rather than plead guilty, he relied on his counsel's incorrect calculation of the guideline range that would apply at sentencing after conviction at trial. Finally,

Torrence argues that he detrimentally relied upon the government's statements of what his guideline range would be after trial. For the reasons set forth below, we will affirm.

I. BACKGROUND

A. Factual History

On September 8, 1999, at 1:30 p.m., Trooper Taylor pulled over Torrence and his two passengers, John Billings and Givan, for speeding on Route 80 in Luzerne County, Pennsylvania, after he clocked their vehicle at 77 miles per hour in a 65 miles per hour zone. In response to Taylor's request for his driver's license and registration, Torrence provided a Michigan driver's license and a rental agreement which indicated that the car had been rented in Michigan

less than 24 hours earlier. Taylor asked Torrence to exit the car and accompany him to the patrol car where he showed Torrence the radar reading and wrote Torrence a warning notice for speeding. Taylor then returned Torrence's license and rental agreement and informed him that he was free to leave.

Nevertheless, Taylor then asked Torrence if he would mind answering a few questions and Torrence agreed. In response to questions about the destination of his trip, Torrence told Taylor that he had come from New Brunswick, New Jersey, where he visited his sister, who had been in a very bad car accident. By this time a second trooper, Louis Rossi, had arrived to assist Taylor with the stop and Taylor asked Rossi to inquire of Givan and Billings as to from where they had come. Either Givan or Billings told Rossi that they were coming back from New York. Taylor then approached the vehicle, and asked Billings and Givan from where they were coming. Billings, in the front seat, said they were coming from New York. Taylor then asked "Anywere else?" and Givan, in the back seat, leaned forward and said that they came from New York only, where they had been visiting some friends. After hearing the inconsistent explanations describing their travels and observing that Torrence appeared to be nervous, Taylor asked him for his consent to search the vehicle. Torrence said he had nothing to hide and consented to the search whereupon Taylor patted him down.

After obtaining Torrence's consent to the search, Taylor asked Billings to step from the vehicle. As Billings exited the vehicle, Taylor noticed a tourniquet protruding from his pocket which Taylor then pulled out. Taylor then asked Billings if he was a heroin addict and Billings responded that he had been, but that he was not any more. Taylor asked Billings if he had any needles. Billings responded "yes" and pulled out a needle and put it on top of the vehicle. At that point Taylor observed a white piece of paper protruding from Billings' front pocket and Taylor pulled the paper out and opened it up. It was a lottery ticket

containing a brown powder substance that appeared to be heroin. As Taylor was looking at the substance, Billings grabbed the ticket and threw the substance into the air.

The troopers then handcuffed Billings and Torrence. They, however, did not handcuff Givan though they did place him on the ground next to Billings and Torrence.

Rossi and Taylor then searched the vehicle and under its back seat Rossi found a bag of heroin in pellet form. Subsequent laboratory testing revealed that the bag contained 113.5 grams of heroin having a purity level of 43%. The DEA was contacted and Torrence, Givan and Billings were given Miranda warnings and transported to the state police barracks in Hazleton, Pennsylvania.

B. Procedural History

After Billings agreed to cooperate in the investigation and entered into a plea agreement, a grand jury returned a two-count Second Superseding Indictment against Givan and Torrence on November 30, 1999. Count I charged that on or about and between a date unknown and September 8, 1999, the defendants conspired to distribute and possess with intent to distribute in excess of 100 grams of heroin in violation of 21 U.S.C. SS 846, 841(a)(1) and 841(b)(1)(B). Count II charged that on or about September 8, 1999, the defendants possessed with intent to distribute in excess of 100 grams of heroin in violation of 21 U.S.C. SS 841(a)(1), 841(b)(1)(B) and 18 U.S.C. S 2. Both counts added, pursuant to 21 U.S.C. S 851, an allegation of Givan's prior felony drug conviction. Both defendants pleaded not guilty.

Givan filed a pretrial motion in limine seeking an order precluding the government from offering his prior felony drug conviction into evidence. By Memorandum and Order dated November 13, 2000, the district court denied Givan's motion. Furthermore, both defendants made unsuccessful pretrial motions to suppress the heroin.

On December 11, 2000, defendants' joint jury trial began. The government called, among other witnesses, Darryl Morgan. Givan objected to Morgan's testimony, claiming that it was not relevant to the issue of whether there was a drug conspiracy and that, in any event, it was more prejudicial than probative. The prosecutor informed the court that Morgan would testify that Torrence had introduced Givan to him as someone from whom Morgan could buy drugs, and that Morgan had purchased heroin

from Givan during the time period of the conspiracy alleged in the Indictment. The court determined that the evidence was admissible and thus overruled Givan's objection and allowed the testimony.

On December 13, 2000, the jury convicted Givan and Torrence on both Counts of the Second Superseding Indictment. Torrence objected to the subsequently prepared presentence report, arguing that his base offense level should be 26 rather than 32 as proposed in the report, and that, contrary to the proposals in the report, neither a firearms enhancement nor a role enhancement should apply. On June 13, 2001, the district court held a sentencing hearing. At the hearing, Torrence's counsel notified the court that Torrence had been under the mistaken impression that his likely guideline sentencing range after trial would be 78 to 97 months, in a"worse case situation." Torrence's counsel indicated that this mistaken impression was based on a conversation he, the counsel, had had with the prosecutor. The prosecutor confirmed that there had been a discussion about the possible guideline range in the context of a proposed plea offer but that no formal plea offer had been made. After listening to the arguments, the court overruled Torrence's objections to the base offense level and the firearms enhancement but upheld his objection to the role enhancement. The court then sentenced Torrence to 151 months imprisonment, to be followed by four years of supervised release, and sentenced Givan to 120 months imprisonment to be followed by eight years of supervised release. Defendants then appealed.

## C. Jurisdiction

We have jurisdiction pursuant to 28 U.S.C. S 1291 and 18 U.S.C. S 3742(a). The district court exercised subject matter jurisdiction pursuant to 18 U.S.C. S 3231.

## II. DISCUSSION

## A. Motion to Suppress

The district court denied Torrence's motion to suppress as evidence the heroin obtained from the vehicle search.1

_____

1. Givan also filed a motion to suppress the evidence found in the vehicle and argues on appeal that he has standing to contest the search of the

The court based its decision on its findings that (1) the troopers had probable cause to charge Torrence with speeding; (2) the troopers had a reasonable suspicion to believe that Torrence had committed a crime justifying further investigation; (3) Torrence freely and unqualifiedly gave consent to the troopers to search the vehicle. We "review[ ] the district court's denial of the motion to suppress for 'clear error as to the underlying facts, but exercise[ ] plenary review as to its legality in light of the court's properly found facts.' " United States v. Riddick, 156 F.3d 505, 509 (3d Cir. 1998) (quoting United States v. Inigo, 925 F.2d 641, 656 (3d Cir. 1991)).

Neither defendant contests the district court's first ruling that the initial stop clearly was justified inasmuch as Taylor clocked the vehicle at 77 miles per hour in a 65 miles per hour zone. After a traffic stop that was justified at its inception, an officer who develops a reasonable, articulable suspicion of criminal activity may expand the scope of an inquiry beyond the reason for the stop and detain the vehicle and its occupants for further investigation. See United States v. Johnson, 285 F.3d 744, 749 (8th Cir. 2002). While "reasonable suspicion" must be more than an inchoate "hunch," the Fourth Amendment only requires that police articulate some minimal, objective justification for an investigatory stop. See United States v. Sokolow, 490 U.S. 1, 13, 109 S. Ct. 1581, 1585 (1989). In determining whether there was a basis for reasonable suspicion, a court must consider the totality of the circumstances, in light of the officer's experience. See United States v. Arvizu, 534 U.S. 266, 273, 122 S. Ct. 744, 750-51 (2002); United States v. Orsolini, 300 F.3d 724, 728 (6th Cir. 2002). Within the last year we have noted that in "the Supreme Court's most recent pronouncement on the Fourth Amendment

_____

vehicle. We do not discuss the standing issue because the government does not contend that Givan does not have standing and, in any event, even if Givan had a legitimate expectation of privacy in the vehicle, Torrence's valid consent would preclude the suppression of the evidence. Moreover, even if Givan did not have standing Torrence certainly does so that in any event we are obliged to adjudicate the suppression issue on the merits.

reasonable suspicion standard, it accorded great deference to the officer's knowledge of the nature and the nuances of the type of criminal activity that he had observed in his experience, almost to the point of permitting it to be the focal point of the analysis." United States v. Nelson, 284 F.3d 472, 482 (3d Cir. 2002).

Even assuming, as the district court seemed to do, that the brief questioning following the return of Torrence's documents occurred while Torrence had been seized for Fourth Amendment purposes rather than during a consensual encounter that began once Torrence's documents were returned and he was informed that he was free to leave, Taylor had a reasonable and articulable suspicion of illegal activity sufficient to extend the stop the few additional minutes it took to ask the occupants about their travel destinations. Taylor knew at that time that: (a) Torrence had been speeding; (b) Torrence was operating a motor vehicle that had been rented less than 24 hours earlier in Saginaw, Michigan; (c) the estimated driving time from Saginaw to New York City and back to the site of arrest was approximately 17 hours; (d) it is a common practice of drug dealers from other states to make a non-stop trip to New York City and back for purchasing drugs; (e) Torrence appeared nervous and fidgety and was talking

often and shuffling his feet. Furthermore, questions relating to a driver's travel plans ordinarily fall within the scope of a traffic stop. See United States v. Williams , 271 F.3d 1262, 1267 (10th Cir. 2001). After receiving conflicting stories from Torrence and the passengers about their travel, Taylor was justified in further extending the stop and asking for consent to search the vehicle. Thus, the district court did not err in holding that the further investigation was justified.

But the defendants contend that even if Torrence gave his consent to search the vehicle at a time Taylor was justified in extending the stop, Torrence did not give his consent freely and voluntarily. The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Pursuant to the Fourth Amendment, warrantless searches of automobiles

frequently are prohibited. It is well settled, however, that a search conducted pursuant to consent is one of the specifically established exceptions to the search warrant requirement. Schneckloth v. Bustamonte, 412 U.S. 218, 219, 93 S. Ct. 2041, 2043-44 (1973). In Schneckloth the Supreme Court stated that voluntariness "is a question of fact to be determined from the totality of all of the circumstances." Id. at 227, 93 S.Ct. at 2048. The district court's determination that Torrence's consent was voluntary was a determination of fact subject to review on a clear error basis. See United States v. Kelly , 708 F.2d 121, 126 (3d Cir. 1983).

In United States ex rel. Harris v. Hendricks, 423 F.2d 1096 (3d Cir. 1970), we elucidated the critical factors comprising a totality of the circumstances inquiry as including the setting in which the consent was obtained, the parties' verbal and non-verbal actions, and the age, intelligence, and educational background of the consenting individual. See id. at 1099. When we apply the totality of the circumstances test to the facts adduced at the suppression hearing, we conclude that the district court's determination that Torrence voluntarily gave his consent rather than did so by reason of duress or coercion, cannot be said to be clearly erroneous.

The facts in the record supporting the district court's determination include: (1) Taylor returned Torrence's license and advised Torrence that he was free to leave before asking Torrence if he would mind answering a few questions and Torrence said that he did not mind; (2) after asking Torrence some initial questions Taylor asked Torrence if he would mind if Taylor looked in the vehicle and Torrence replied that he had nothing to hide and Taylor could go ahead and look; (3) Taylor testified that when he asked Torrence for his consent, he told Torrence that his consent had to be voluntary and that Torrence did not have to allow the search; (4) both troopers testified that

Torrence gave consent without any coercion or duress and this testimony was unrebutted; (5) Torrence gave his consent while standing on the side of a major highway in broad daylight, see United States v. Velasquez , 885 F.2d 1076, 1082 (3d Cir. 1989), and prior to being handcuffed.

There is nothing in the record indicating that Torrence's age, intelligence or educational background in any way limited his ability to consent voluntarily to the search. Torrence cites the decision of the Court of Appeals for the Sixth Circuit in United States v. Mesa, 62 F.3d 159 (6th Cir. 1995), in support of his position that the district court erred in denying his motion to suppress. But, as the government points out, Mesa is inapposite because its facts materially differ from those here. Most notably, Mesa was locked in the back of a police vehicle when she consented to a search of the vehicle. See id. at 161. The totality of the circumstances in this case are more similar to those in United States v. Velasquez, 885 F.2d at 1081 82, and indicate that Torrence freely and voluntarily consented to the search. The district court's finding of voluntariness was not clearly erroneous.

B. Evidence of Givan's Prior Felony Drug Conviction

We next discuss Givan's argument that the district court erred when it admitted into evidence under Fed. R. Evid. Rule 404(b) testimony to the effect that Givan had been convicted of a felony drug offense in Des Moines County, Iowa, on January 25, 1993. To the extent that our review of this ruling requires us to consider the district court's interpretation of the rules of evidence our review is plenary. See United States v. Furst, 886 F.2d 558, 571 (3d Cir. 1989). But, assuming that the evidence could be admissible in some circumstances, we review the district court's decision to admit it on an abuse of discretion basis. See United States v. Console, 13 F.3d 641, 658-59 (3d Cir. 1993); United States v. Saada, 212 F.3d 210, 223 (3d Cir. 2000).

Fed. R. Evid. 404(b) provides in relevant part that: "Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident. . . ." We have recognized that Rule 404(b) is a rule of inclusion rather than exclusion. See United States v. Jemal, 26 F.3d 1267, 1272 (3d Cir. 1994). We favor the admission of evidence of other criminal

conduct if such evidence is "relevant for any other purpose than to show a mere propensity or disposition on the part of the defendant to commit the crime." United States v.

Long, 574 F.2d 761, 765 (3d Cir. 1978) (quoting United States v. Stirone, 262 F.2d 571, 576 (3d Cir. 1958), rev'd on other grounds, 361 U.S. 212, 270, 80 S.Ct. 270 (1960)). In Huddleston v. United States, 485 U.S. 681, 108 S. Ct. 1496 (1988), the Supreme Court set out a four-part test for admission of Rule 404(b) evidence: (1) the evidence must have a proper purpose; (2) it must be relevant; (3) its probative value must outweigh its potential for unfair prejudice; and (4) the court must charge the jury to consider the evidence only for the limited purposes for which it is admitted. Id. at 691-92, 108 S.Ct. at 1502; United States v. Vega, 285 F.3d 256, 261 (3d Cir. 2002).

The government argues that Givan's 1993 conviction was proper Rule 404(b) evidence because it was probative of Givan's intent, knowledge, and absence of mistake or accident. The government argues that because it had to prove that Givan knew, prior to its discovery by the troopers, that a quantity of heroin was hidden in the back seat of the rental car and that it had to prove that Givan possessed the heroin with intent to distribute it, "knowledge and intent were material and contested issues at trial." Br. of Appellee at 47. The government also argues that the evidence was offered to rebut a defense of innocent association. The district court accepted the government's arguments stating that the "circumstances of this case illustrate the probative value of Givan's past drug conviction on the question of whether he had knowledge of the heroin in the back seat; whether, with such knowledge, he had intent to secret it; and that the presence of heroin immediately underneath his body was not there because of accident or mistake." Givan's app. at 30.

Knowledge, intent, and lack of mistake or accident are well-established non-propensity purposes for admitting evidence of prior crimes or acts. See Fed. R. Evid. 404(b). Inasmuch as a showing of knowledge, intent and lack of mistake or accident was essential for the government to meet its burden of proof in this case, and the 1993 felony drug conviction was evidence that the jury could consider

11

as shedding light on the key issues of whether Givan knew about the drugs in the vehicle, the court admitted the prior felony conviction for a proper purpose. See United States v. Parsee, 178 F.3d 374, 379 (5th Cir. 1999); United States v. Martino, 759 F.2d 998, 1004-05 (2d Cir. 1985).

In the circumstances, taking into account our holding with respect to Rule 404(b), we conclude that the evidence of Givan's felony conviction passes the less focused admissibility threshold in Fed. R. Evid. 401. Under Rule 401 relevant evidence means "evidence having a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." The evidence that Givan had been convicted of distribution of cocaine makes Givan's knowledge of the presence of the

heroin more probable than it would have been without the evidence as it indicates that Givan had knowledge of drugs and drug distribution, and thus that it was less likely that he was simply in the wrong place at the wrong time. Therefore, being relevant the evidence of the prior conviction was not inadmissible as a matter of law. See Fed. R. Evid. 402.

Even though we have concluded that evidence of Givan's 1993 felony drug conviction was not inadmissible on a legal basis, we must evaluate the evidence against the unfair prejudice standard of Fed. R. Evid. 403. See Government of Virgin Islands v. Harris, 938 F.2d 401, 420 (3d Cir. 1991). Fed. R. Evid. 403 provides that relevant evidence may be excluded if, inter alia, "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. . . ." We review the district court's application of Rule 403 on an abuse of discretion basis. See id. But as we stated in United States v. Long, 574 F.2d at 767, "[i]f judicial self-restraint is ever desirable, it is when a Rule 403 analysis of a trial court is reviewed by an appellate tribunal."

Givan argues that the district court failed to engage in a Rule 403 balancing of the probative value versus the prejudicial effect of admitting his prior felony drug conviction and that this omission requires us to reverse his conviction. However, in its Memorandum and Order

12

denying Givan's motion in limine requesting the court to preclude the government from offering into evidence Givan's 1993 felony drug conviction the district court found that "the probative value of the prior conviction is not substantially outweighed by the danger of unfair prejudice to the defendant." Givan's app. at 30. While the district court did not set forth its reasons for concluding that the scale tipped in favor of admission of the evidence, the court did provide the jury with a limiting instruction regarding the prior conviction in which the district court emphasized the limited purpose for which the evidence was admissible,[2]

_____

2. The district court's instruction to the jury on the Rule 404(b) evidence included the following:

   [T]he government has offered evidence showing that on a different occasion the defendant, Yul Darnell Givan, engaged in conduct similar to the charges in this indictment. This evidence concerned his conviction in 1993 in Iowa for delivery of cocaine. But Givan is not on trial for committing this other act. He is not on trial here for that offense. Accordingly, you may not consider this evidence of similar act as a substitute for proof in this case that Givan committed the crimes charged in the indictment.

   Nor may you consider this evidence as proof that Givan has a criminal personality or a bad character. Specifically, you may not use this evidence to conclude that because Givan committed the

other act he must also have committed the acts charged in this indictment. The evidence of other similar crimes was admitted for a much more limited purpose.

And in the government's view it's evidence which tends to prove Givan's knowledge of the heroin in the car in this case and his attempt to distribute it.

In other words, as has been argued to you, that because of his prior drug conviction and his alleged -- or consequently his alleged familiarity with the drug, you may consider that in determining whether -- as he was seated in the back seat -- whether he had knowledge of the heroin that was -- the troopers ultimately found in the back seat. You may consider that conviction only for that limited purpose.

And if you determine that he possessed the heroin and that he delivered cocaine in Iowa on an earlier occasion, then you may, but you need not draw an inference that in possessing the heroin in this case he acted knowingly and intentionally and not because of some mistake, accident or other innocent reason.

13

thereby minimizing any prejudicial effect. Givan does not claim that the district court's limiting instruction was inadequate to prevent unfair prejudice. Overall, we cannot find that the district court abused its discretion under Rule 403.

In upholding the admission of the Rule 404(b) evidence, we recognize that Judge McKee in his dissent contends that "the jury could only have considered the prior conviction to establish Givan's criminal propensity," dissent at 26, and makes much of the circumstance that the prior conviction involved cocaine and not heroin as here. We note, however, that it is a basic tenet of our jurisprudence that a jury is presumed to have followed the instructions the court gave it, see United States v. Gilsenan, 949 F.2d 90, 96 (3d Cir. 1991), and the court's instructions did not allow the use of the evidence in the way that Judge McKee contends that it used it. If we preclude the use of evidence admissible under Rule 404(b) because of a concern that jurors will not be able to follow the court's instructions regarding its use we will inevitably severely limit the scope of evidence permitted by that important rule. Moreover, the distinction Judge McKee draws between the types of drugs involved is of limited significance in the context of this case in which the conviction is germane only with respect to Givan's knowledge of the presence of drugs. It is not as if dealing in cocaine and heroin are mutually exclusive endeavors. Finally on this point we note that our result is consistent with that reached by other courts of appeals. See, e.g., Parsee, 178 F.3d at 379; Martino, 759 F.2d at 1004-05. These cases cannot be distinguished reasonably from this case so that if we reject the Rule 404(b) evidence we will create a conflict among the circuits.

C. Morgan's Testimony

Givan also argues that the district court erred when it allowed the jury to hear the testimony of Darryl Morgan because his testimony constituted evidence of other criminal conduct impermissible under Fed. R. Evid. 404(b), or, alternatively, Morgan's testimony was not relevant to the conspiracy count of the indictment. The government argues that Morgan's testimony was directly relevant to the existence of a drug conspiracy involving Torrence and

14

Givan and that Morgan's testimony was proof of the existence of the drug conspiracy charged in Count I of the Second Superseding Indictment. We review the district court's decision to admit this evidence on an abuse of discretion basis. See United States v. Sokolow , 91 F.3d 396, 402 (3d Cir. 1996).

The government is correct that Morgan's testimony was relevant because it made the existence of a key fact-- that Torrence and Givan were working together in a conspiracy to distribute heroin in and around Saginaw, Michigan, during 1999 -- more probable than it would have been without his testimony. Morgan testified that he was aware of a drug conspiracy in Saginaw involving Torrence and Givan. In particular, he testified that Torrence had introduced Givan to him as someone from whom he could buy drugs and that he bought heroin from either Torrence or Givan on a daily basis from March to September 1999. Moreover, he testified that Torrence and Givan had split up the Saginaw area, with Torrence selling on the west side of town, and Givan on the south side and because he lived closer to the south side, it was often more convenient for him to buy from Givan. He also testified that if he paged Torrence and Torrence was not available, he would page Givan.

In the circumstances Morgan's testimony was direct proof of existence of the drug conspiracy alleged in the indictment and was not subject to the limitation in Rule 404(b) of the admissibility of evidence of "other crimes, wrongs, or acts." See United States v. Maynie , 257 F.3d 908, 915 (8th Cir. 2001); United States v. Sriyuth, 98 F.3d 739, 747 (3d Cir. 1996); United States v. Retos , 25 F.3d 1220, 1228, n.10 (3d Cir. 1994); 22 C. Wright & K. Graham, Federal Practice and Procedure S 5239, at 450 (1978). Thus, the district court did not abuse its discretion in allowing the jury to hear Morgan's testimony.

D. Base Offense Level and Firearms Enhancement

Torrence contends that the district court clearly erred in finding that he was involved in the distribution of between one and three kilograms of heroin and that he possessed a firearm in relation to drug trafficking. We review the district

15

court's findings of fact on these issues for clear error, see United States v. Miele, 989 F.2d 659, 663 (3d Cir. 1993), but apply plenary review to its construction of the Sentencing Guidelines, see United States v. Bethancourt, 65 F.3d 1074, 1080 (3d Cir. 1995). When sentencing a defendant, the district court only need base its determinations on the preponderance of the evidence with which it is presented. See United States v. McDowell, 888 F.2d 285, 291 (3d Cir. 1989). Information used as a basis for sentencing must have "sufficient indicia of reliability to support its probable accuracy." U.S.S.G. S 6A1.3(a).

The testimony established by a preponderance of evidence that Torrence was involved in the distribution of at least one kilogram of heroin. Billings testified that during the years of 1995, 1996, and 1997 he and Torrence traveled to Chicago approximately every three months to purchase $15,000-$30,000 worth of heroin and cocaine and that in 1998 and 1999 he and Torrence traveled to New York approximately every three months to obtain $30,000 worth of heroin and/or cocaine. Billings testified that $30,000 would buy eight to nine ounces of heroin in New York. According to Billings, Torrence made at least five trips for heroin, each time for eight ounces, for a total of 40 ounces, or one and three tenths kilograms. Billings' testimony was also consistent with the quantity of drugs found in the car. Billings testified that he and Torrence bought two packages of heroin that day but that he did not know what happened to one of the packages. The fact that one package was seized from the vehicle, weighing almost four ounces, supported Billings' testimony that they bought eight ounces that day for $30,000.

The heart of Torrence's argument is that the district court erred in relying on Billings' testimony because of his unreliability. While Billings is a drug addict, his testimony, in contrast to that considered in United States v. Miele, 989 F.2d at 667, was not internally inconsistent and, also in contrast to that in Miele, was corroborated by the testimony of another witness, Darryl Morgan. See id. at 664-65. Billings' and Morgan's testimony was subject to vigorous cross-examination and at the sentencing hearing the district court listened to extensive argument on the issue of

16

drug quantity. The court, which observed their demeanor and was in a position to judge their credibility, carefully considered the estimates based on their testimony and concluded that the witnesses were reliable. As we have stated "assessments of credibility by the trial court are entitled to great deference at the appellate level." United States v. Brothers, 75 F.3d 845, 853 (3d Cir. 1996). Because we agree that there was at least a minimal indicia of reliability to support the court's reliance on Billings' and Morgan's testimony relating to drug quantity, we conclude that its drug quantity calculation was not clearly erroneous.

Torrence also argues that the district court clearly erred in finding that he possessed a firearm in relation to drug trafficking. The court took Torrence's possession of a firearm into account in adding two points to his offense level, in accordance with U.S.S.G. S 2D1.1(b)(1).

The government established by a preponderance of evidence that a firearm was used at the time the offense was committed. Billings testified that Torrence gave him a gun to protect them on every trip they took to pick up drugs and that in particular Torrence gave him a gun on the September 7, 1999 trip. This testimony was subject to cross-examination and was not rebutted. The district court, after listening to arguments from Torrence's counsel and the government, and then relying on its own recollection of the evidence, concluded that Billings was credible on this point and that the firearms enhancement should apply. While Torrence makes much of the fact that the troopers did not recover the firearm from the vehicle or at the scene of arrest, there is no support for his argument that such recovery is a prerequisite to the application of the firearms enhancement. Similarly, there is no support for his argument that he should not have received the firearms enhancement because Billings did not receive it. The district court's determination that the firearms enhancement should apply was not clearly erroneous.

E. Ineffective Assistance of Counsel and Due Process

Torrence also claims that his right to effective assistance of counsel was violated because in deciding to take the case

17

to trial rather than plead guilty, he relied upon his counsel's incorrect calculations of the guideline range that would apply at sentencing after a conviction at trial. However, claims of ineffective assistance of counsel ordinarily are not cognizable on direct appeal. United States v. Mustafa, 238 F.3d 485, 497 (3d Cir. 2001); United States v. Tobin, 155 F.3d 636, 643 (3d Cir. 1998). Rather, the proper mechanism for challenging the efficacy of counsel is through a motion pursuant to 28 U.S.C. S 2255. As the government points out, the record in this case is inadequate for us to address the issue of ineffective assistance of counsel for, even if we accept as true all of Torrence's factual assertions, the record does not establish what, if any, prejudice Torrence suffered by reason of the incorrect calculation of his anticipated guideline range. For example, for all we know Torrence might have gone to trial regardless of the calculations supplied. See United States v. Sandini, 888 F.2d 300, 312 (3d Cir. 1989) ("[C]laims predicated upon attorney's error do require a showing of prejudice and therefore may involve facts not adequately developed in the record.") (emphasis in original).

Torrence's last argument is that he detrimentally relied upon the government's erroneous statements during plea

discussions before trial of what the applicable guideline range would be. Citing Santobello v. New York , 404 U.S. 257, 92 S. Ct. 495 (1971), and Virgin Islands v. Scotland, 614 F.2d 360 (3d Cir. 1980), he contends that the government should have been estopped based on these statements from asserting that his base offense level was higher than 26 and that we should vacate his sentence and require the trial court to accept as binding a base offense level of 26. The record indicates that the parties' counsel had a pretrial discussion concerning the applicable guideline range, and that they underestimated the base offense level that would apply after trial. However, in contrast to the situation in Santobello and Scotland, the government never made any formal plea offer to Torrence. In these circumstances there is no support for Torrence's argument that the government should have been estopped from asserting that he was subject to a base offense level higher than 26.

18

III. CONCLUSION

For the foregoing reasons, we will affirm the judgments of convictions and sentence entered June 25, 2001.

19

McKEE, Circuit Judge, concurring in part, and dissenting in part:

I fully concur in the analysis Judge Greenberg sets forth in parts II A ("Motion to Suppress"), II C ("Morgan's Testimony"), II D ("Base Offense Level and Firearms Enhancement"), and II E ("Ineffective Assistance of Counsel") of the majority opinion. However, for the reasons that follow, I believe the district court's denial of Givan's motion in limine to exclude his prior conviction under Fed. R. Evid. 404(b) is inconsistent with our caselaw. Accordingly, I must respectfully dissent from part II B of the majority opinion affirming that ruling.

I.

Fed. R. of Evid. 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . . .

Although evidence of a prior "bad act" is admissible if it is being admitted to establish something other than the defendant's character, we have cautioned that such testimony is not easily divorced from the improper purpose

of suggesting bad character or criminal propensity. Thus, we have noted that "inquiries of relevance and proper purpose are intimately intertwined. Evidence that is not relevant, by definition cannot be offered for a proper purpose, and evidence that may be relevant for some purposes may be irrelevant for the purpose for which it is offered." United States v. Morley, 199 F.3d 129, 133 (3d Cir. 1999).

In order to insure that evidence offered under Rule 404(b) is being offered for a proper purpose and not merely to establish a defendant's criminal propensities, we have held that the proponent of such evidence must clearly articulate why it is relevant for something other than establishing

20

criminal propensity or character. In United States v. Himelwright, we declared "[t]he proponent must clearly articulate how that evidence fits into a chain of logical inferences, no link of which may be the inference that the defendant has the propensity to commit the crime charged." 42 F.3d 777, 782 (3d Cir. 1994) (emphasis added) (citing United States v. Jemal, 26 F.3d 1267, 1272 (3d Cir. 1994)). That pronouncement is clearly the law of this circuit. Yet, it is so often honored in the breach that it resonates about as loudly as the proverbial tree that no one heard fall in the forest.

Here, the chain of inferences is forged from conclusory statements such as: "circumstances of this case illustrate the probative value of Givan's past drug conviction on the question of whether he had knowledge of the heroin in the back seat; whether, with such knowledge, he had intent to secrete it; and that the presence of heroin immediately underneath his body was not there because of accident or mistake." Maj. Op. at 11. That nexus would be tenuous at best even if the prior conviction involved heroin. However, Givan's 1992 conviction involved cocaine, not heroin as is the case here, and there is absolutely nothing on this record that would allow the jury to make any meaningful or relevant comparison of the charged heroin to the prior cocaine distribution other than Givan's character. Absent any testimony about the similarity of cocaine to heroin, the government simply cannot establish that familiarity with one is relevant to a defendant's knowledge of the other. Rather, the cocaine conviction is only relevant because it establishes Givan's character and his propensity for involvement with illegal drugs. The logical inference became: "He was guilty in 1992, so he must be guilty here."

When asked, the prosecutor confirmed that the prior conviction was being admitted to establish "modus operandi," and the district court accepted that. Trial Transcript Vol. I., pp.12, 36. The court further noted that the conviction could be relevant to "knowledge or absence of mistake," Id. at 33-4. The prosecutor also insisted that the 1992 incident was admissible under Rule 404(b) by arguing that "[i]t . . . goes to intent and absence of

mistake." Id. at 13.

In United States v. Sampson, we stated:"Although the government will hardly admit it, the reasons proffered to admit prior bad act evidence . . . is often mixed between an urge to show some other consequential fact as well as to impugn the defendant's character." 980 F.2d 883, 886 (3d Cir. 1992). The prosecution's attempt to impugn Givan's character, as well as the wisdom of Himelwright 's requirement that the proponent articulate a permissible chain of inferences, both become apparent from a careful study of this trial transcript.

The prosecutor initially insisted that the prior conviction was relevant because Givan had been arrested in a car where cocaine was later found hidden under a seat just as occurred here. The prosecutor suggested that this detail was more probative of Givan's guilt here than the fact of his prior conviction. He argued:

> The fact is, I called the sergeant [the arresting officer in 1992], he told me about the circumstances surrounding the arrest, and it seemed to me, and indeed I'm arguing here today, it is indeed more probative of the issue of intent and absence of mistake than would be just a piece of paper that says he was convicted of a drug offense.

Trial Transcript, Vol. I, p. 13. The prosecutor had subpoenaed Sgt. Beaird, the arresting officer from Iowa. Beaird participated in a controlled buy of cocaine from Givan in April of 1992. A warrant issued for Givan's arrest shortly after that buy. However, although Givan was placed under surveillance following the April distribution, he was not arrested until September of 1992. His car was searched following that arrest, and a quantity of cocaine was found under the driver's seat. Givan had not been the driver when arrested, but he was questioned by Sgt. Beaird and admitted that the cocaine was his.1

Beaird informed the prosecutor of this background when the prosecutor contacted him about the 1992 conviction

---

1. For reasons I will explain infra, Givan was thereafter convicted only of the April delivery, and charges arising from the discovery of cocaine in his car and his confession were dismissed.

before this trial. The prosecutor then tried to admit Givan's confession regarding the cocaine in the car in 1992 as well as the conviction that had been the subject of the motion in limine. The district court explained,"as I understand, the government is . . . under 404, claiming . . . there was a similar modus operandi, if you will, years ago would be

probative of the fact that there was cocaine secreted under the seat in this instance. Are you going beyond that?" The prosecutor confirmed that this was the only reason he wanted to admit the confession. He responded: "No, Judge, I would just say that it was heroin in this case, cocaine in that case." Trial Transcript, Vol. I., p 12. The court then sought further clarification and asked the prosecutor, "is your basis for seeking admissibility here, not that he was convicted, but that the drug was secreted in the same manner as you claim it was secreted here?" Id . The prosecutor responded: "Yes, that is the basis for it." Id. at 13. The court then noted that the prior incident was "somewhat similar to the factual situation here, . . . concealing . . . the drug packet under . . . or between the . . . back seat." Id. at 19 (emphasis added).

Thus, at this point, one could state the chain of inferences under Himelwright as follows: Givan was convicted of distributing cocaine in 1992 and cocaine was found under the seat of his car when he was arrested for that distribution. He admitted that the cocaine was his. Therefore, if one ignores the evidentiary disconnect between cocaine and heroin (other than its relation to criminal propensity) one could conclude that the prior conviction was being offered to show a similar "modus operandi" or method of hiding the controlled substance. Indeed, this is exactly why the prosecutor said he wanted to admit Givan's 1992 confession, and he insisted that he was not"going beyond that."

However, this evidentiary chain does not survive close scrutiny. "[T]he government has been unable to articulate any theory that unites these isolated events which occurred six years apart, without resorting to the kind of character-based inference prohibited by Rule 404(b)." Government of the Virgin Islands v. Pinney, 967 F.2d 912, 916 (3d. Cir. 1992).

23

> A jury can rationally infer from evidence that the defendant committed a prior crime in an unusual and distinctive manner and evidence that a second similar crime was committed in the same unusual and distinctive manner that the defendant committed the second crime. This case, however, does not involve such signature evidence. The evidence concerning the manner in which the two alleged crimes were committed here was neither sufficiently detailed nor significantly unusual to permit any inference . . . . There are similarities between the two alleged incidents . . . . But these shared characteristics are not sufficiently unique . . . .

Id. at 916; see also McCormick on Evidence S 190, at 559-60 (3rd ed. 1984) ("Much more is demanded than the mere repeated commission of crimes of the same class. . .. The pattern and characteristics must be so unusual and distinctive as to be like a signature.").

The act of hiding illegal drugs under the seat of a car is hardly so unique as to create an inference that it was the defendant who hid heroin under the car seat here because he had hidden cocaine under a car seat seven years before. Moreover, the court here did not allow any testimony about Givan's September 1992 arrest, the subsequent confession, or the fact that cocaine was found under the car seat when he was arrested in 1992. After protracted argument by counsel and after hearing the testimony of Sgt. Beaird outside the presence of the jury, the district court ruled that the 1992 confession should not be admitted because it was obtained illegally,2 and that any probative value of Givan's confession was outweighed by the danger of prejudice and confusion. See Trial Transcript, Vol III, pp 52-3. Nevertheless, the prosecutor was permitted to inform the jury about Givan's 1992 conviction even though the

_____

2. Sgt. Beaird informed the court that the cocaine that was discovered was later suppressed along with Givan's confession because the suppression court determined that the search was not conducted pursuant to a general policy for inventory searches. See South Dakota v. Opperman, 428 U.S. 364, 369 (1976). Accordingly, Givan was only convicted of the earlier distribution of cocaine in April 1992.

24

asserted (albeit tenuous) relevance of that conviction disappeared when the court refused to allow evidence of the September 1992 seizure and confession into evidence.

Accordingly, I fail to see how the 1992 conviction for cocaine distribution was probative of anything other than the fact that Givan was the kind of person who would have put the heroin under the seat. This is exactly what defense counsel argued in opposing this evidence. While objecting to evidence of the 1992 confession defense counsel argued: "Judge, . . . it's not showing knowledge or mistake. It's showing a propensity. It's . . . suggesting what this defendant has a propensity to do. . . . And how do we show this? Because he's done this before. . . . And I say, that's not probative, that's prejudicial." Trial Transcript, Vol I, p. 35.

The government relies in part on United States v. Boone, 279 F.3d 163 (3d Cir. 2002), in arguing that Givan's prior conviction for cocaine was relevant for the proper purpose of establishing intent or absence of mistake. See Appellee's Br. at 37. However, Boone, proves the contrary. Boone was charged with numerous offenses including illegal delivery of cocaine. 279 F.3d at 171. At trial, he attempted to argue that he was merely an ignorant "go-fer" without any knowledge of the contents of the bags that he admitted delivering. Id. at 187. The trial court allowed the government to introduce evidence of Boone's two prior convictions for cocaine distribution to rebut that defense. Id. We affirmed noting that the evidence of the prior convictions was "admitted to show that Boone was familiar

with drug trafficking practices. . . ." Id . The probative chain that bridged the evidentiary gap there is obvious. Boone's familiarity with drug trafficking practices and his ability to recognize cocaine and its packaging was clearly relevant to determining if he knew what he was doing when he delivered bags to certain people. Id. The jury was not asked to swing across any break in the chain of logical inferences by clinging to an evidentiary vine woven from testimony of the defendant's bad character and criminal propensity. Yet, here the prosecutor never articulated any "chain of logical inferences," Jemal, 26 F.3d at 1272, relevant to anything other than propensity. That is all that connected the prior conviction to the heroin found in the car here.

25

The majority correctly notes that the trial court cautioned the jury not to consider this evidence as evidence of Givan's criminal personality or bad character. Rather, the court told the jury that, based upon Givan's familiarity with "the drug," "you may consider that in determining whether -- as he was seated in the back seat -- . . . he had knowledge of the heroin . . . . you may consider that conviction only for that limited purpose." (emphasis added). However, as noted above, "the drug" involved in the prior conviction was cocaine, not heroin. Moreover, it can not seriously be argued that the act of placing drugs under the seat of a car is so unique as to imprint a defendant's "signature" upon the crime. Pinney, 967 F.2d at 916. Absent some admissible evidence to forge the link required under Himelwright, the jury could only have considered the prior conviction to establish Givan's criminal propensity. 3 Accordingly, I cannot agree that the prior conviction was relevant and admissible evidence.

My colleagues stress that we must assume that jurors follow a judge's instructions. The Majority concludes that we must therefore assume that the jury only considered the prior conviction for a proper purpose, and not as evidence of Givan's character. See Maj. Op. at 14 (citing United States v. Gilsenan, 949 F.2d 90, 96 (3d. Cir. 1991)). However, absent something akin to a "signature crime" or circumstances showing Givan's familiarity with the way cocaine is packaged based upon the six year old conviction, the jury could hardly have considered this evidence for anything other than character. Nothing else ties the six year old cocaine conviction to Givan's culpability here, and the district court's instruction did not change that.

Indeed, the court in Morley also gave a cautionary charge; one that was much stronger than the one given here. Yet, we stated, "the court's charge can not cure the

---

3. The gap in the required chain of logical inferences is all the more egregious here because Beaird was available as a witness and the prosecutor therefore had an opportunity to question him about the appearance of the cocaine he purchased in 1992, and establish how it compared to the heroin taken from the car here that the Troopers would

describe. See Trial Transcript, Vol III, pp. 1-18.

26

danger inherent in the [bad acts] testimony . . . ." 199 F.3d
at 140.4 Similarly, the jury in Pinney was told:

> The defendant is not on trial for committing acts not
> alleged in the Information. The defendant is on trial on
> the single charge in the Information. Therefore, you
> may not consider the evidence of a similar act as a
> substitute for proof that the defendant committed the
> crime charged in the Information, nor may you
> consider such evidence of a similar act as proof that
> the defendant has a criminal personality or a bad
> character. If you determine that the defendant
> committed the act charged in the Information and,
> also, committed one or more similar acts as well, then
> you may, but you need not, draw an inference that in
> doing one or more of them, and in doing the act
> charged in the Information, the defendant acted
> knowingly and intentionally and not because of some
> mistake, accident or other innocent reason. So, too, if
> you find that the defendant did engage in such alleged
> conduct, and if you find that such other conduct has
> sufficiently similar characteristics to that charged in
> the information, you may, but you need not, infer . . .

_____

4. The court in Morley charged:

> [Y]ou've heard evidence of . . . the alleged act of the defendant
> obtaining notary seals on bonds of . . . Mr. DeStefano. There are no
> charges pending in this case with respect to that. You must not
> consider any of that evidence in deciding if the defendant committed
> the acts charged in the indictment.
>
> However, you may consider this evidence for other very limited
> purposes. If you find beyond a reasonable doubt from other evidence
> in this case that the defendant did commit the acts charged in the
> indictment, then you may consider evidence of similar alleged
> conduct on another occasion . . . to determine whether the
> defendant had the state of mind or intent necessary to commit the
> crime or crimes charged in the present indictment. .. .
>
> [Y]ou are only permitted to use that other conduct to show his
> intent . . . in the present indictment. They are not permitted to show
> that he is--his general character. That would be an improper use of
> that evidence.

199 F.3d at 140

27

> that the act charged in the Information and such other
> alleged, similar conduct, were part of a common plan
> or scheme permitted [sic] by the defendant. Evidence of
> similar acts may not be considered by you for any

other purposes. Specifically, you may not use such evidence to conclude that because the defendant committed such other act, he must, also, have committed the act charged in the Information.

967 F.2d at 915. Finally, in Sampson, the court instructed:

Now you heard testimony regarding the defendant's prior convictions for drug offenses. You may not consider the defendant's prior convictions as evidence tending to establish a tendency to commit the offense with which he is charged in this case. In other words, you may not infer because the defendant was convicted of drug offenses in the past it is any more likely that he committed the offense charged in the indictment. You may consider the defendant's prior convictions only as they relate to proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, and not for any other purpose.

980 F.2d at 888-9. Yet, we held in Sampson that, "[t]his instruction does not cure the error. Where the government has not clearly articulated reasons why the evidence is relevant to any legitimate purpose, there is no realistic basis to believe that the jury will cull the proper inferences and material facts from the evidence." Accordingly, I must conclude that "there is no realistic basis to believe" that this jury was somehow able to "cull the proper inferences and material facts from the evidence" here.5

_____

5. Of course, "[t]he foregoing discussion . . . seems very much beside the point to any experienced litigator. The obvious reason the government wanted [the prior conviction] testimony before the jury was because of the substantial likelihood that one or more members of the jury would use this highly inflammatory evidence for exactly the purpose Rule 404(b) declared to be improper. . . ." Pinney , 967 F.2d at 917.

II.

Moreover, even assuming that the prior conviction was relevant for a proper purpose, I believe that its probative value was still outweighed by its potential for prejudice and it therefore should have been excluded under Rule 403. Fed. R. Evid. 403 requires that the court balance the prejudicial impact of admissible evidence to insure that its probative value outweighs the risk of unfair prejudice. Jemal, 26 F.3d at 1272. This is, of course, particularly important when evidence of bad acts is being admitted under Rule 404(b).

There can be little doubt of the prejudicial impact of Givan's prior conviction. Although the testimony of Morgan and Billings, if accepted, established that Givan was involved in a conspiracy to distribute heroin, the only evidence connecting Givan to the heroin in this case is the testimony of Billings. Of course, Billings was also in the car

and could have placed the heroin under the rear seat himself. There was, in fact, testimony that could have raised a reasonable doubt regarding whether Billings placed the heroin under the seat, or whether Givan did. Trooper Rossi testified that when he approached the car the passenger seat where Billings was sitting was reclined and that at times Billings was turning around facing the rear passenger. Trial Transcript Vol. II, p 49. He also conceded on cross examination that he had previously testified that it appeared to him that Billings seemed to be reaching backwards "towards the back seat." Id. at 96. Billings denied this and testified that he did not make any motions toward the back seat. Id., p. 237. However, the very fact that Billings disputed the Trooper's testimony could have raised a reasonable doubt about Billings' veracity and the joint and/or constructive possession of the heroin.

I realize, of course, that the combined testimony of Morgan and Billings may still have been enough to convince a jury either that Givan placed the heroin under the seat, or that he at least possessed it jointly in the course of a conspiracy to distribute it. However, testimony of Givan's 1992 conviction creates too substantial a risk that the jury convicted Givan because of the propensity "evidenced" by that conviction and not because Billings' testimony proved

the case beyond a reasonable doubt. After all, the police actually found heroin on Billings. This combined with Billings' obvious motive to fabricate and attribute the rest of the heroin in the car to someone else could easily have raised a reasonable doubt as to Givan's involvement with the heroin in the car absent the evidence of Givan's conviction. Although one can argue that this is exactly why evidence of the prior conviction was relevant, that position flies in the face of the prohibition contained in Rule 404(b).

III.

The evidentiary evil of evidence of bad character is that it has this visceral relevance that subtly and "logically" suggests its admissibility absent the kind of careful scrutiny that Himelwright and its progeny require. We all assume that one who has previously been convicted of dealing drugs is more likely to have something to do with drugs hidden in his vicinity than someone with no prior drug involvement. However, that logical inference is not one that Rule 404(b) allows the trier of fact to draw absent some other proper relationship between the prior conviction and subsequent illegal conduct he may be charged with. We addressed this visceral relevance in Himelwright. We concluded that it is only when the proponent is required to articulate a proper chain of inferences unconnected to character or propensity that the trial court can insure that evidence of bad acts is not being admitted for an improper purpose. 42 F.3d at 782.

Failure to follow the analysis we set forth there all too

often results in evidence of propensity or bad character being paraded before the jury with the ever-present refrain of "intent, common scheme, plan, design, absence of mistake" that will always accompany an attempt to admit evidence under Rule 404(b). Absent more of an analysis than appears on this record, the discipline required under Rule 404(b) is easily displaced by "logical" but forbidden inferences that disguise propensity and character as something else. That is what happened here. Accordingly, I must dissent from the majority insofar as it concludes that

30

Givan's prior conviction was properly admitted under Rule 404(b).

A True Copy:
Teste:

    Clerk of the United States Court of Appeals
    for the Third Circuit

31