

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-5-2006

# USA v. Chatterpaul

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-4038

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"USA v. Chatterpaul" (2006). *2006 Decisions.* Paper 351.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/351

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 05-4038

———

UNITED STATES OF AMERICA,

Appellee

v.

NAIPAUL CHATTERPAUL,

Appellant

———

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 04-cr-00381)
District Judge: Honorable William W. Caldwell

———

Submitted Under Third Circuit LAR 34.1(a),
September 11, 2006

Before: FUENTES, FISHER, and BRIGHT,[*] Circuit Judges.

(Filed October 5, 2006)

---

[*] The Honorable Myron H. Bright, Senior Judge, United States Court of Appeals
for the Eighth Circuit, sitting by designation.

---

## OPINION OF THE COURT

---

FUENTES, Circuit Judge.

Appellant Naipaul Chatterpaul challenges his conviction and sentence for trafficking in counterfeit goods in violation of 18 U.S.C. § 2320(a).  On appeal, he raises the issue of whether the District Court erred in refusing to suppress evidence necessary for conviction based on the argument that the evidence was obtained in connection with an illegal search.  For the reasons that follow, we will affirm the District Court's denial of the motion to suppress.

## I.       Background

On the morning of November 2, 2004, Pennsylvania State Troopers Brian Henneman and Brian Overcash were sitting in an unmarked police vehicle in the northbound rest area at Interstate 81, in Penn Township, Cumberland County.  A handheld radar unit used by the Troopers showed that a Budget truck heading northbound on the highway was traveling at a speed of seventy-seven miles per hour in a sixty-five miles per hour zone.  Henneman and Overcash exited the rest area, radioed for back-up assistance, and followed the Budget truck, which appeared to be following a white box truck.  After several miles, Henneman and Overcash stopped the Budget truck, and back-up officers stopped the white box truck.

At the suppression hearing conducted by the District Court, Henneman and Overcash testified that when they approached the Budget truck, Chatterpaul, who was

sitting in the passenger's seat, and his brother, Chunilall, who had been driving, appeared "nervous." The Chatterpauls presented Henneman and Overcash with a rental agreement and their New York state driver's licenses. The Troopers then returned to the police vehicle to verify the license and registration information.

While Henneman checked the information, Overcash spoke to the back-up officers who informed him that the occupants of the white box truck stated that they were not traveling with the Budget truck. Overcash went back to the Budget truck and asked Chatterpaul and his brother if they were traveling with the white box truck. The Chatterpauls stated that they were. Overcash reported the inconsistency to Henneman and said, "something is going on . . . we're going to have to ask some questions." (App., vol. 2, at 56.)

At the suppression hearing, Overcash provided the following account of what transpired next:

> A.    Trooper Henneman prepared a written warning notice for the speeding violation. We exited the patrol vehicle. Trooper Henneman asked the driver to exit the vehicle. He was issuing a written warning to him. I was actually having a conversation with the passenger in the vehicle.
> Q.    Were you able to ascertain who the passenger was?
> A.    Yeah, he was identified through a New York photo license as Naipaul Chatterpaul, Richmond Hill, New York.
> . . .
> Q.    Okay. Go ahead. So you indicated that you were having a discussion with the passenger?
> A.    Yeah. I asked him where he was coming from. I believe he said he was in Tennessee at some type of convention. I advised him that, upon completion of the traffic stop, you know, when Trooper Henneman had issued the written warning and everything, that he would be free to go. And Trooper Henneman finished up with his written warning notice. And because Naipaul was actually the renter

of the vehicle, I feel he's essentially the owner at that point in time. Advising him he was free to go. I asked him a few more questions relative to the purpose of his trip, and he said he was selling handbags. I asked, what type of handbags? He said he had various brands. I asked him if he would have any problems with me taking a look at the cargo in the back. He said he had no problem with that. He removed a key. I don't know if it was on the ignition or where it was but he walked to the rear of the box truck and removed a padlock, unlocked it, opened the door up, and there was numerous boxes filled in the back. I inspected the cargo, noticed some Louis Vuitton handbags, asked Naipaul Chatterpaul–I knew they were expensive handbags–if they were knock-offs. First, he didn't answer me, but then he related that they were, that he owned a business for a couple of months, and he traveled around the country, and actually gave me his next two destinations. I believe one of which was going to be in New Orleans, where he was going. And he sells these handbags. At that point, I was sure I was dealing with trademark counterfeiting issues . . . .

Id. at 29-31. Henneman's testimony at the suppression hearing was consistent with Overcash's.

Chatterpaul and his brother provided a somewhat different account. They testified that the Troopers had not returned their driver's licenses before asking to inspect the back of the truck, and that it was Overcash, not Chatterpaul, who removed the keys from the ignition and opened the back of the truck. Based on this version of events, Chatterpaul and his brother filed a joint motion to suppress the evidence seized from the back of the truck. The District Court denied the motion, concluding that "the police officers involved had reasonable suspicion to expand their inquiry following the traffic stop and that the

4

Defendants gave valid consent for the search of their vehicle."[1]  Id. at 133.

For the reasons set forth below, we will affirm the District Court's denial of the motion to suppress.

## II.     Jurisdiction and Standard of Review

Our jurisdiction over this appeal is based on 28 U.S.C. § 1291.  We review the District Court's denial of a motion to suppress for clear error as to the underlying factual findings and exercise plenary review of the District Court's application of the law to those facts.  United States v. Williams, 413 F.3d 347, 351 (3d Cir. 2005).

## III.    Discussion

Chatterpaul does not contend that the initial traffic stop was unjustified.  What he does argue is that Henneman and Overcash improperly expanded their inquiry beyond what was necessary to carry out the traffic citation.  We agree with the District Court's determination that Chatterpaul's argument is without merit.

An officer who develops a reasonable, articulable suspicion of criminal activity may expand the scope of an inquiry beyond the reason for a traffic stop and detain a vehicle and its occupants for further investigation.  United States v. Givan, 320 F.3d 452, 458 (3d Cir. 2003).  While "reasonable suspicion" must be more than an inchoate "hunch," the Fourth Amendment requires only that the police articulate some minimal,

---

[1] Chatterpaul and his brother subsequently entered conditional guilty pleas to violation of 18 U.S.C. § 2320(a), and were sentenced to twelve months of probation, six months of supervised release, a fine of $200.00 and a $100.00 special assessment. Chatterpaul's brother did not appeal his conviction.

5

objective justification for the investigation.  Id.  Reasonableness is determined in light of the totality of the circumstances.  Id.  In United States v. Arvizu, the Supreme Court explained that the totality of the circumstances inquiry "allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" 534 U.S. 266, 273 (2002).

In this case, Overcash had a reasonable and articulable suspicion of illegal activity sufficient to justify asking Chatterpaul additional questions about the purpose of the trip. At the time, Overcash knew that: (1) Chatterpaul and his brother were speeding; (2) either Chatterpaul and his brother or the occupants of the white box truck were lying about whether the two trucks were traveling together; (3) Chatterpaul and his brother appeared nervous; (4) based on his prior experience in narcotics interdiction, rental trucks are frequently used to transport illicit drugs or other contraband.

Taken together, these considerations provided Overcash with a reasonable basis for expanding the inquiry beyond the initial traffic citation.  See Givan, 320 F.3d at 458-59 (finding that officer had reasonable suspicion to extend the inquiry where defendant was speeding in a rental vehicle, appeared nervous, and provided inconsistent statements about his trip).  Therefore, the inquiry did not, as Chatterpaul contends, constitute an illegal seizure under the Fourth Amendment and did not taint the validity of his subsequent consent to the search.

In addition, to the extent that Chatterpaul suggests that his consent to the search

6

was the product of duress or coercion, we find that this argument lacks merit as well. It is well-settled that a search conducted pursuant to consent is one of the specifically established exceptions to the search warrant requirement. Id. at 459. The voluntariness of such consent "is a question of fact to be determined from the totality of all of the circumstances." Id. (internal quotation marks omitted). We therefore review for clear error the District Court's determination that Chatterpaul's consent was voluntary. Id.

Here, there was conflicting testimony at the suppression hearing concerning (1) whether Overcash requested permission to search the vehicle prior to or after the Chatterpauls were given back their driver's licenses and were told that they were free to leave, and (2) whether it was Henneman or Chatterpaul who actually removed the key from the ignition and opened the back of the truck.

In denying the motion to suppress, the District Court presumably credited the Troopers' testimony that their request to search the back of the truck was made after they returned the driver's licenses and informed the Chatterpauls that they were free to leave, and did not find any other evidence in the record sufficient to suggest that Chatterpaul's consent was anything but freely given. Having reviewed the record, we cannot say that the District Court's conclusion was clearly erroneous. Rather, there is ample evidence to support its finding that the consent was voluntary.

## IV. Conclusion

For the foregoing reasons we will affirm the District Court's decision denying the motion to suppress.