Randall MCFADDEN, Appellant,

v.

UNITED STATES of America, Appellee.

No. 86–3396.

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit Rule 12(6)
March 5, 1987.

Decided March 20, 1987.

Rehearing and Rehearing In Banc
Denied April 15, 1987.

Randall D. McFadden, appellant-pro se.

George E. Schumacher, Federal Public Defender, David G. Rothey, Asst. Federal Public Defender, Pittsburgh, Pa., for appellant McFadden.

J. Alan Johnson, U.S. Atty., Bonnie R. Schlueter, Asst. U.S. Atty., Pittsburgh, Pa., for appellee.

Before GIBBONS, Chief Judge, SEITZ and ALDISERT, Circuit Judges.

## OPINION OF THE COURT

SEITZ, Circuit Judge.

Randall McFadden appeals a judgment of sentence. We have jurisdiction under 28 U.S.C. § 1291 (1982).

McFadden entered a conditional guilty plea to certain counts of a multi-count indictment. Three issues are raised on appeal.[1] We consider these issues in turn.

### A.

■ McFadden and his counsel contend that McFadden did not possess the requisite mental state to violate 18 U.S.C. § 844(f) (1982 and Supp. III 1985), as charged in Count II of the indictment. Our review of this issue is plenary.[2]

Section 844(f) provides, in relevant part:

Whoever *maliciously* damages or destroys, or attempts to damage or destroy, by means of an explosive, any building, vehicle, or other personal or real property in whole or in part, owned, possessed, or used by, or leased to, the United States, any department or agency thereof, or any institution or organization receiving Federal financial assistance shall be imprisoned for not more than ten years, or fined not more than $10,000 or both. . . .

(emphasis added). McFadden placed an explosive device in the mail with the intent to kill Janet Sczudlo. The device exploded prior to delivery at a United States Post Office in Warrendale, PA. McFadden and counsel argue that because he intended to blow up Sczudlo, and not the post office, he did not "maliciously" damage or destroy government property within the meaning of Section 844(f).

In construing the term "maliciously" in Section 844(f), the following principles of statutory construction are pertinent. "Generally, when Congress uses a common law term in a federal criminal statute without otherwise defining it, Congress is presumed to adopt the meaning given to that term at common law." *United States v. Everett,* 700 F.2d 900, 904 (3rd Cir.1983). In addition, "[i]f Congress uses a term in a criminal statute which has no widely accepted common law meaning at the time of enactment, the term should be given the meaning consistent with the purpose of the enactment and its legislative history." *Id.* However, "[e]ven if the word had a generally accepted common law meaning, the courts will not impose that meaning if there are 'grounds for inferring an affirmative instruction from Congress' to define it otherwise." *Id., quoting Morissette v. United States,* 342 U.S. 246, 273, 72 S.Ct. 240, 255, 96 L.Ed. 288 (1952). Thus, we must determine the common law meaning of the term "maliciously," and Congressional intent in enacting Section 844(f).

1. The Federal Public Defender for The Western District of Pennsylvania initially represented McFadden in this appeal. After the Public Defender filed a brief challenging, *inter alia,* the district court's determination that McFadden was not competent to stand trial, McFadden moved to proceed *pro se* in this appeal. A panel of this court granted McFadden's motion in an order entered October 20, 1986. We have considered the arguments presented by both McFadden and the Public Defender.

2. The government argues that under the concurrent sentence doctrine, we need not review this contention because McFadden was sentenced to concurrent ten year terms on three additional counts to which he pled guilty, and McFadden has not challenged those convictions. While we have the discretion to refuse to consider the challenge, *see United States v. Lampley,* 573 F.2d 783, 788 (3rd Cir.1978) and *United States v. Sebetich,* 776 F.2d 412, 423 & n. 7 (3rd Cir.1985), we have cautioned that the doctrine should not be applied when there is a significant risk of greater adverse collateral consequences from multiple convictions. *Lampley,* 573 F.2d at 788. Because there is a significant risk of greater adverse collateral consequences, we decline to exercise our discretion to refuse to consider the challenge in this case.

At common law, one acts "maliciously" if he acts intentionally or with willful disregard of the likelihood that damage or injury will result. C. Torcia, *Wharton's Criminal Law*, §§ 137, 486 (14th Ed.1979); R. Perkins and R. Boyce, *Criminal Law*, 856–861 (3rd Ed.1982). Relying on portions of the legislative history of the Organized Crime Control Act of 1970 and the Explosives Control Act for the proposition that Congress sought to eliminate the specific intent requirement of an earlier statute when it enacted Section 844(f), the government argues that Section 844(f) adopts the common law standard. Specifically, the government cites the testimony of Will R. Wilson, Assistant Attorney General of the Criminal Division of the Department of Justice, *see* "Explosives Control Act," Hearings Before Subcommittee No. 5, House Committee on the Judiciary, 91st Cong., 2nd Sess., 36, and the comments of Congressman Wiley Mayne of Iowa, *see id.* at 117.

We believe the government's reliance on this testimony and the comments is misplaced. Wilson's testimony and Mayne's comments addressed the revision of former Section 837(b) of Title 18. Following adoption of the changes in the intent requirement suggested in the testimony and comments, former Section 837(b) was reenacted as current Section 844(d). Section 844(f), on the other hand, was an entirely new provision, adopted as part of the Organized Crime Control Act of 1970. *See* H.R.Rep. No. 91–1549, 91st Cong., 2nd Sess., (1970), *reprinted in* 1970 United States Code Congressional and Administrative News 4007, 4046. The evolution of Section 844(d) has no bearing on the question before us.

Our own review of the legislative history of Section 844(f), however, leaves us unconvinced that Congress intended to adopt a meaning of "maliciously" other than the common law usage. There is no indication that Congress intended to employ some other meaning of the term. The House Report makes clear that Congress intended to permit prosecution under Section 844(f) unless damage to government property occurs accidentally. *See* H.R.Rep. No. 91–1549 1970 United States Code Congressional and Administrative News at 4046. Accidental damage is ordinarily inflicted negligently or involuntarily. Prosecution for non-accidental damage is fully consistent with adoption of the common law meaning of the term "maliciously."

■ McFadden plainly acted with willful disregard of the likelihood that damage or injury would result. He thus "maliciously" damaged or destroyed government property within the meaning of Section 844(f).[3]

### B.

McFadden's counsel contends the trial court erred in concluding McFadden was competent to stand trial. We review to ensure the court's finding is not clearly erroneous. *United States v. Green*, 544 F.2d 138 (3rd Cir.1976), *cert. denied*, 430 U.S. 910, 97 S.Ct. 1185, 51 L.Ed.2d 588 (1977). *See also Maggio v. Fulford*, 462 U.S. 111, 103 S.Ct. 2261, 76 L.Ed.2d 794 (1983) (treating competency determination as a factual finding).

■ In order to be competent to stand trial, a defendant must be able to consult with counsel with a reasonable degree of rational understanding, and he must have a rational understanding of the nature and object of the proceedings against him. *Drope v. Missouri*, 420 U.S. 162, 172, 95 S.Ct. 896, 904, 43 L.Ed.2d 103 (1975). At the competency hearing, the psychiatrist and psychologist who had examined McFadden testified that they considered him incompetent to stand trial because he could not openly and freely discuss the case with his attorney. Essentially, each of the doctors stated that if McFadden could freely cooperate with his attorney, they would consider him competent to stand trial. The district court's conclusion that McFadden was competent to stand tri-

---

**3.** In light of our disposition of this contention, we need not reach the government's contention that because the Explosives Control Act is a regulatory statute that can be classified as a public welfare statute, there would be a reasonable basis for reading Section 844(f) without any *mens rea* requirement.

al necessarily implies that the court found that McFadden was capable of freely discussing the case with counsel.

■ In this connection, we note that McFadden's conduct at the competency hearing and at the plea colloquy demonstrates understanding of the proceedings and the nature of the charges against him, as well as that he had discussed his case with counsel. We also note that McFadden's trial counsel at first indicated to the court that he and his client discussed the case fairly openly, but appears to have retracted that position at a later proceeding. While this is a matter of deep concern to the court, we conclude that in the final analysis it was a matter to be evaluated by the trial judge. The trial judge, after hearing the retraction, reiterated his conclusion as to McFadden's competency. Under the circumstances, we cannot say that the district court's determination that McFadden was competent to stand trial is clearly erroneous.

### C.

McFadden and his counsel finally challenge the district court's refusal to suppress the evidence of his criminal conduct.

■ McFadden was at the Meyersdale Community Hospital, allegedly visiting a friend. When he refused to leave the premises after visiting hours ended, hospital nurses summoned the police. Officer Deist arrived just after McFadden left the building. The nurses described McFadden's attire, pointed out the door through which he had left, and told Deist into which parking lot the door led. Deist saw McFadden and signalled him to stop before he left the hospital's parking lot, but McFadden drove off. Deist then followed McFadden and signalled him to stop using his flashing lights.

When McFadden stopped, Deist asked him for his driver's license, registration and social security card. McFadden could only produce the first two, and Deist returned to his cruiser to run a computer check on McFadden. The computer wasn't working, so Deist returned to McFadden's

car. By now, McFadden had found his social security card, and he read his number to Deist. Deist then returned to his cruiser to attempt one more time to verify McFadden's identity through the computer. McFadden, however, drove off at a fast pace. Deist gave chase. McFadden eventually eluded capture by stopping his car in the middle of the road, leaving the engine running, and streaking off into the woods. After a one and one-half hour search failed to turn up McFadden, the police impounded his car. An inventory of the car's contents revealed the evidence which McFadden seeks to suppress.

McFadden and counsel contend that the seizure of the evidence was unlawful because it resulted from an unlawful stop. They first argue that the district court erred in concluding that Deist had a reasonable suspicion that justified stopping McFadden in the first place. We review the district court's finding under the clearly erroneous standard. *United States v. Doffin,* 791 F.2d 118, 120 (8th Cir.), *cert. denied,* — U.S. —, 107 S.Ct. 210, 93 L.Ed.2d 140 (1986). After a careful review of the record, we believe that the district court could have readily concluded that Deist had at least an articulable suspicion that criminal activity was afoot and that McFadden was involved in it. For this reason, the court's finding is not clearly erroneous.

■ McFadden and counsel next argue that the stop was unreasonable under the circumstances. Our review of this issue is plenary. Criminal trespass is a third degree felony under Pennsylvania law. 18 Pa. C.S.A. § 3503; 18 Pa. C.S.A. § 106. Deist's stop was brief and properly limited to investigatory purposes. Under these circumstances, we cannot conclude that the stop was unreasonable.

■ Finally, McFadden contends that the district court erred in concluding that he had abandoned his car. In our view of the case, it matters not whether McFadden abandoned his car. In *South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976), the Supreme Court stated that "[t]he authority of police to

seize and remove from the street vehicles impeding traffic or threatening safety and convenience is beyond challenge." *Id.* at 369, 96 S.Ct. at 3097. For this reason, Deist's seizure of McFadden's car and the subsequent inventory search were within the bounds of the Fourth Amendment.[4]

### D.

For the foregoing reasons, the judgment of the district court will be affirmed.

---

**4.** McFadden also argues that the inventory of the car constituted a pretext for a warrantless search. Because this contention was not raised in the trial court, we need not consider it here.