UNITED STATES of America,

v.

George LUNA, a/k/a Jorge Emigdio Luna, Appellant.

No. 02–1249.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) July 7, 2003.

Decided Aug. 8, 2003.

Before NYGAARD, SMITH, and GREENBERG, Circuit Judges.

OPINION OF THE COURT

NYGAARD, Circuit Judge.

George Luna was convicted by a jury of one count of conspiracy to possess with the intent to distribute cocaine, 21 U.S.C. § 846, and one count of possession with the intent to distribute cocaine, 21 U.S.C. § 841, after he was arrested while transporting 822 kilograms of cocaine. Luna was sentenced to 210 months incarceration, five years supervised release, and a $5,000 fine. On appeal, Luna argues that the consent he gave to Pennsylvania State Troopers to search his tractor-trailer was

involuntarily obtained. Alternatively, he argues that an improper pat-down occurring during the initial moments of an otherwise lawful traffic stop tainted his later consent. We will affirm.

In early February 1999, special agents of the Drug Enforcement Administration received information that drugs were being transported in commercial tractor-trailers through Pennsylvania. Luna's tractor-trailer was placed under surveillance based on related information. State Trooper Felix Acosta, a DEA Task Force Member, alerted fellow State Trooper, Thomas Martinez, of the surveillance on Luna's tractor-trailer and asked Officer Martinez to attempt to find an independent probable cause to stop the vehicle and, if possible, obtain consent to search the vehicle. Although not informed why the DEA was interested in the vehicle, Officer Martinez began following at a safe distance behind Luna's tractor-trailer on the Pennsylvania Turnpike.

After observing the tractor-trailer drifting and crossing over the center yellow line four times, Officer Martinez pulled Luna's tractor-trailer over to the side of the highway near the Morgantown exit. It is undisputed that the erratic driving constituted a summary traffic offense and authorized Officer Martinez to initiate the traffic stop. Once stopped, Officer Martinez approached the cab and asked Luna for his driver's license, vehicle registration, and proof of insurance. Luna was then asked to step out from the cab and was subjected to a quick pat-down for a weapon, despite Officer Martinez's later testimony that he did not have a specific articulable reason to suspect Luna possessed a weapon.

The two men then moved from the side of the highway to the rear of the vehicle, where Officer Martinez noticed that Luna's eyes were "glassy, bloodshot" and that Luna appeared "disoriented." He inquired as to whether Luna had been drinking or using drugs, to which Luna responded in the negative. Officer Martinez indicated that he would issue a traffic citation and proceeded to administer two field sobriety tests on Luna. Luna passed both tests and Officer Martinez asked if Luna had drugs or alcohol in the tractor-trailer. Luna responded in the negative. Officer Martinez proceeded to question Luna as to his load and destination, and asked to see Luna's logbook and bill of lading. Officer Martinez became suspicious when the answers given by Luna did not match the information on the documentation. A chance to explain the discrepancies was lost when Luna was again asked his destination and gave a location that contradicted both his earlier statement and the documentation.

Officer Martinez again asked if there were any drugs or alcohol in Luna's tractor-trailer, to which Luna responded, "No," but that "if [he] wanted to, [he] could check" for himself. Interpreting this statement to constitute verbal consent to search the tractor-trailer, Officer Martinez asked if Luna would agree to "make it official" by filling out a "Waiver of Rights to Consent to Search" form. Officer Martinez reviewed the form with Luna, explaining that he did not have to sign the form or consent to the search. Luna signed the consent form.

Once the form was signed, Officer Martinez asked if he could "take a quick visual" of the load in the trailer. Luna agreed and returned to the cab to retrieve the keys for the trailer. Luna then unlocked the trailer and assisted Officer Martinez in opening the double doors. Contrary to Luna's earlier explanation that he was returning a damaged load, the load appeared undamaged and further raised Officer Martinez's suspicions. Due to the high

traffic volume and narrow berm, Officer Martinez suggested that Luna drive the tractor-trailer to the parking area of the Morgantown toll booth, located 125 yards further ahead on the highway. Luna agreed, but upon arriving in the parking area, was unable to position the truck in a manner that would not impede cars exiting the Turnpike.

After recognizing the logistical problems caused by attempting to search the tractor-trailer at this location, and in ever-worsening weather, Officer Martinez suggested that the tractor-trailer be driven to the state trooper barracks in Bowmansville. This facility included a large PennDOT shed where the search could be conducted while protected from the elements. Luna agreed to this transfer and the conditions associated with it, accompanying another trooper to the barracks while Officer Martinez awaited help in moving the tractor-trailer. As part of standard police practice, Luna was handcuffed while riding in the uncaged patrol car, but was repeatedly informed that he was not under arrest and that all civilians being transported in uncaged state police car were treated this way. Luna did not object and returned to the Bowmansville barracks where a search of the tractor-trailer revealed 822 kilograms of cocaine hidden within the multiple pallets. Luna was informed of this discovery and placed under arrest.

■ Luna makes two arguments on appeal. First, he asserts that his consent was not freely given to search the tractor-trailer because it was the product of the "coercive effect" of the initial pat-down and "unlawfully prolonged detention" for a traffic stop. Second, he argues that the government failed to show that the taint from the initial pat-down was overcome, and thus his consent was invalid. Both arguments fail.

The voluntariness of consent "is a question of fact to be determined from the totality of all of the circumstances." *Schneckloth v. Bustamonte*, 412 U.S. 218, 227, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). Thus, the District Court's determination that Luna's consent was voluntarily given is one of fact and is subject to review on the basis of clear error. *United States v. Givan*, 320 F.3d 452, 459 (3d Cir.2003). We have described "the critical factors comprising a totality of the circumstances inquiry as including the setting in which the consent was obtained, the parties' verbal and non-verbal actions, and the age, intelligence, and educational background of the consenting individual." *Id.* In looking at the totality of the circumstances, although Officer Martinez did improperly pat-down Luna during the initial moments of the stop, the District Court did not err in finding that Luna freely gave his consent to the search. Officer Martinez was justified in expanding the scope of his inquiry based on his reasonable suspicion of criminal activity.[1] Further, it was Luna

1. Officer Martinez had probable cause to stop Luna once he observed the tractor-trailer crossing the marked traffic lanes, in violation of Pennsylvania Vehicle Code, Title 76, § 3309, § 1. During the course of the traffic stop, Officer Martinez was permitted to request documentation related to Luna's ability to operate the vehicle, *McFadden v. United States*, 814 F.2d 144, 147 (3d Cir.1987), and question Luna as to his destination, *United States v. Givan*, 320 F.3d 452, 459 (3d Cir.

2003). He was also permitted to expand the scope of his inquiry beyond the reason for the stop and detain the vehicle and Luna for further investigation based upon a reasonable, articulable suspicion of criminal activity. *Givan*, 320 F.3d at 458. Here, Officer Martinez suspected Luna of being under the influence of alcohol or drugs. Thus, the questions and field tests related to that topic were justified. The further incongruities between travel documentation and Luna's response to travel-

who invited Officer Martinez to search his vehicle, responding to a question regarding the presence of drugs or alcohol in the tractor-trailer by saying "No," but "if [Martinez] wanted to, [he] could check" the contents of the trailer. After orally consenting, Luna then agreed to sign a waiver form consenting to the search in writing to "make it official."

Never once did Luna indicate that he was objecting to the search, despite Officer Martinez having explained on numerous occasions that Luna was not under arrest and did not have to consent. Moreover, through his own actions, Luna indicated his consent to the search. When asked by Officer Martinez if he could "take a quick visual" of the cargo, Luna did not object, but proceeded to retrieve the necessary keys and aid Officer Martinez in opening the locks and doors on the tractor-trailer. Finally, Luna has made no argument that he did not possess the requisite age, intelligence, or educational background to consent. The District Court correctly concluded that Luna gave his consent for the search voluntarily.

██ To determine if an impermissible seizure under the Fourth Amendment taints later consent, we look to: "[t]he temporal proximity of the [impermissible conduct] and the [consent], the presence of intervening circumstances, and, particularly, the purpose and flagrancy of the official misconduct." *Brown v. Illinois*, 422 U.S. 590, 603–04, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975) (citations omitted). Unlike the cases cited by Luna, Officer Martinez had probable cause to initiate the traffic stop, the pat-down was very brief, and he was justified in extending the length of his inquiry based on a reasonable suspicion of further criminal activity. Thus, Luna's argument under the temporal proximity

prong that "the improperly prolonged detention continued right up to the giving of consent" is erroneous. *See* App. Br. at 36.

Similarly, Luna argues that there were no intervening circumstances because his statement offering to allow Officer Martinez to search the trailer "and the signing of the written consent form were both part of the 'res gestae' of the illegally prolonged detention and were causally related to it." *See* App. Br. at 33. This argument presupposes the illegality of the detention and is incorrect. Finally, the purpose and flagrancy prong favors Officer Martinez. In *Brown*, the Supreme Court noted that "[t]he impropriety of the arrest was obvious ... The arrest, both in design and in execution, was investigatory. The detectives embarked upon this expedition for evidence in the hope that something might turn up." *Brown*, 422 U.S. at 605, 95 S.Ct. 2254. Here, Officer Martinez had probable cause to initiate the traffic stop, the brief pat-down was unrelated to obtaining Luna's consent, and any detention was justified based on the circumstances arising during the stop.

Under the totality of the circumstances, the District Court was not clearly erroneous in concluding that Luna's consent was voluntarily obtained, or that the pat-down and extended stop did not taint Luna's consent.

For the foregoing reasons we will affirm the judgment of the District Court.

related questions justified an expanded inves-

tigation.