**UNITED STATES of America,**

v.

**Derrick A. ROBERTS, Appellant.**

No. 03–1107.

United States Court of Appeals,
Third Circuit.

Submitted under Third Circuit LAR
34.1(a) July 24, 2003.

Decided Aug. 22, 2003.

Emily McKillip, Office of United States
Attorney, Philadelphia, PA, for Appellee.

Christopher G. Furlong, Media, PA, for
Appellant.

Before ALITO, FUENTES and
BECKER, Circuit Judges.

OPINION OF THE COURT

BECKER, Circuit Judge.

This is an appeal by Derrick Roberts
from the judgment of the District Court
following the entry of a conditional guilty
plea to counts of possession of more than
five grams of cocaine base in the form of
"crack" cocaine with intent to distribute,
21 U.S.C. § 841(a); carrying a firearm
during and in relation to a drug trafficking

crime, 18 U.S.C. § 924(c); possession of a firearm by a convicted felon, 18 U.S.C. § 922(g); and possession of a firearm with an obliterated serial number, 18 U.S.C. § 922(k). The sole issue on appeal concerns Roberts' motion to suppress the evidence found during a search of his car following a car stop for an alleged motor vehicle violation. Following an evidentiary hearing, the District Court filed a memorandum and order denying the suppression motion. The facts are well known to the parties hence we need not recount them in detail here and will limit our discussion largely to our *ratio decidendi*. For the reasons that follow, we affirm.

■ The questions before us are whether Roberts was illegally detained after the traffic stop and whether the search of his vehicle was non-consensual. Our inquiry begins with the stop of Roberts' car by the Bensalem police. That stop was plainly lawful, for Officer Clee had reasonable cause to believe that the car violated the law against excessively tinted windows. On stopping Roberts' car, Clee asked Roberts for his driver's license and vehicle registration and requested a computer check on that information. He was clearly entitled to do this. *See McFadden v. United States*, 814 F.2d 144, 147 (3d Cir. 1987). Clee asked Roberts to step out of the car when he gave Roberts the written warning for the illegally tinted windows, which he was also entitled to do. *See Pennsylvania v. Mimms*, 434 U.S. 106, 111 n. 6, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977).

■ Turning to the request to search, there was no evidence of circumstances that carried a message that compliance with the request to the search was required. Clee did not touch Roberts, display his weapon, or speak in a demanding manner. Neither the presence of additional officers nor the fact that Clee had Roberts step to the back of the car converts what the District Court found to be a consensual encounter into a seizure. In fact, Clee had returned Roberts' license and registration and gave him the written warning before asking for consent to search the car. In short, there was no evidence of any show of authority that would have caused a reasonable person to believe that he was not free to leave.

Since the evidence shows that, at the time Clee asked Roberts for his consent to search the car Robert was not detained, the request for consent to search was proper and the search of the car was valid. More important even than our own analysis are the facts that the District Judge, in his September 5, 2001 Memorandum and Order, found, on the basis of these facts, that the testimony of Officer Clee was credible and that Roberts' consent to search was voluntarily given, and that these findings are clearly supported by the record.

This is not the end of the matter, however, for Roberts contends that the continued detention, after he had received a warning for violation of Section 4524(e)(1) of the Motor Vehicle Code, was unlawful and, therefore, tainted any subsequent consent to search his person or his vehicle. In his October 31, 2002 Memorandum, the District Judge made the following findings of fact:

> When Bensalem Police Officer, David Clee, radioed headquarters to conduct a check of Defendant's driver's license and vehicle registration, headquarters informed Officer Clee that the information from New York concerning Defendant's driver's license and vehicle registration was unavailable because the State of New York did not respond to the inquiry. (July 31, 2001 Tr. At 11 and 55). Headquarters also informed Officer Clee that Defendant had previously been arrested on drug charges and that there was possibly an active deportation war-

rant outstanding for Defendant. (July 31, 2001 Tr. At 10–11). Officer Clee asked headquarters to try to verify the existence of the deportation warrant. *Id.* While Officer Clee was waiting for more information from headquarters about the Defendant's immigration status, he proceeded to call for backup. He then exited his vehicle, approached Defendant's vehicle, and requested that Defendant exit his vehicle. (July 31, 2001 Tr. At 11–12). While standing with Defendant behind Defendant's car, Officer Clee informed Defendant that his windows were tinted in violation of the motor vehicle code. He proceeded to hand Defendant a written warning. He also returned Defendant's license and registration to him. (July 31, 2001 Tr. At 12–13). Officer Clee then asked Defendant about his travel plans, his arrest record, his immigration status, whether he had guns or drugs in the vehicle, and the identity of his passenger. (July 31, 2001 Tr. At 14 and 59). Defendant told Officer Clee that he had come from new York City that day. This was not consistent with Defendant's earlier representation to Clee about driving from Buffalo. (July 31, 2001 Tr. At 14). Defendant told Clee that his passenger's name was "Rock," but he could not provide any additional information about the passenger, not even the passenger's last name. (July 31, 2001 Tr. At 14 and 41). Defendant also explained that he was on bail pending a deportation hearing and made a vague statement about being arrested before. (July 31, 2001 Tr. At 41, 58). After stating that there were no guns or drugs in his vehicle, Defendant consented to a pat-down search of his body. (July 31, 2001 Tr. At 14). In the pat-down, Officer Clee discovered more than $2,000 in cash and a small pocket knife. *Id.* During the time that Defendant was being questioned, his passenger was seated in the

Defendant' scar, talking on a cell phone. The two back up officers were standing 3 or 4 feet from the Defendant and Officer Clee. (July 31, 2001 Tr. At 12, 14). At this time, Officer Clee asked Defendant for permission to search the car. Defendant responded, "go ahead." (July 31, 2001 Tr. At 15). Only approximately ten minutes had passed between the time that Officer Clee stopped the Defendant's vehicle and the time that he obtained the consent to search the vehicle. (July 31, 2001 Tr. at 37–39). The Officers proceeded to search the car and first discovered a "dime bag" of marijuana in plain view on the floor of the vehicle. As the search continued they discovered controlled substances and weapons in hidden compartments in the vehicle.

These findings are also supported by the record. Given these facts, the temporally modest continued detention was justified, and the District Court's consent finding remains intact.

The judgment of the District Court will be affirmed.