

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-13-2005

# USA v. Bullard

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-1632

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"USA v. Bullard" (2005). *2005 Decisions.* Paper 125.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/125

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 04-1632
_____

UNITED STATES OF AMERICA

v.

DERRICK BULLARD,

Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 01-cr-00456-02)
District Judge:  Honorable Petrese B. Tucker

_____

Submitted Under Third Circuit LAR 34.1(a)
December 9, 2005

Before:  RENDELL, FISHER and GREENBERG, *Circuit Judges*.

(Filed: December 13, 2005)
_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

I.

Appellant Derrick Bullard was convicted by a jury of conspiracy to possess with

intent to distribute 50 grams or more of cocaine base, in violation of 21 U.S.C. § 846.  In

a special interrogatory, the jury found that Bullard had previously been convicted of another felony drug offense prior to the date of the offense at bar. The District Court sentenced Bullard to 20 years' imprisonment, the statutory minimum under 21 U.S.C. § 841(b)(1)(A).

Bullard challenges his conviction and sentence on several grounds. For the reasons that follow, we will affirm the conviction and sentence.

II.

As we write only for the parties, who are familiar with the factual context of the case, we will set forth only those facts necessary to our analysis. Bullard was arrested during an investigation of one Phillip Berry, from whom agents of the Drug Enforcement Administration ("DEA") had previously made three purchases of crack cocaine using a confidential informant. The informant was given marked cash with which to make the purchases, and wore a hidden microphone during the transactions. The agents retained the cocaine, and searched the informant before and after each purchase.

The fourth transaction occurred on July 10, 2001. Monitored by agents of the DEA and the Philadelphia Police Department, the informant entered Berry's house and was told by Berry that the cocaine was not there, but soon would be. The informant waited with Berry for twenty minutes, then left the house and returned to the agents' vehicle. At the direction of the agents, the informant called Berry several times over the next hour to ask when the cocaine would be available. After an hour, a car drove up and

2

parked in front of Berry's house. Bullard got out of the car and entered Berry's house. As Bullard approached the house, Berry called the informant and told him that the cocaine had just arrived. The informant then entered the house and paid Berry $1900 for two ounces of cocaine. The transaction was monitored and recorded by the agents. The informant then returned to the agents' vehicle, turned over the cocaine, and reported that the man who had just arrived in the car (Bullard) was present during the transaction, and that after the informant gave the money to Berry, Berry had handed some of the money to the other man.

Bullard then returned to his car and drove away. The police immediately stopped the car, and searched it and Bullard's person. A gun was recovered from the car, and Bullard was found to be carrying $1500 of the marked cash that the informant had just paid to Berry for the cocaine.

## III.

### A.

Bullard first contends that the District Court erred in denying his motion to suppress introduction of the gun and the money on the ground that the government's confidential informant was not reliable. We review the denial of a motion to suppress for clear error as to the underlying facts, and we exercise plenary review of the District Court's application of law to those facts. *United States v. Perez*, 280 F.3d 318, 336 (3d Cir. 2002).

3

The basis for Bullard's charge of unreliability is the fact that the informant admitted to using drugs three weeks prior to Bullard's arrest, and was later terminated as an informant by the DEA for attempting to keep for himself some of the cocaine he purchased during controlled buys. We need not decide whether these facts so impugn the informant's reliability as to vitiate probable cause, however, because Bullard was not arrested on the word of the informant. Bullard was arrested, rather, on the basis of a cocaine transaction personally observed by DEA agents in which Bullard's participation could reasonably be inferred. The agents brought the informant to the house where the informant sought to buy cocaine, and heard (via microphone) Bullard's co-conspirator, Berry, tell the informant that the cocaine was not yet available. The agents waited with the informant while he repeatedly called Berry and asked when the cocaine would arrive. They then witnessed Bullard drive up to the house, park his car, and go inside, and immediately thereafter heard Berry call the informant and tell him that the cocaine had arrived. The agents then gave the informant $2000 in marked cash, and the informant went into the house. The agents listened to the transaction via the informant's microphone. The informant then left the house and delivered the cocaine to the agents.

The probable cause that supported the search and arrest of Bullard was provided by the agents' firsthand observation of Bullard's actions. This is not a situation in which an informant had told the agents that there were drugs for sale at a particular house, and the agents had then stopped Bullard as he was approaching that house, solely on the basis

4

of the informant's statement. In such a situation, the reliability of the informant would at least be relevant to the suppression motion, though not necessarily dispositive. *See Illinois v. Gates*, 462 U.S. 213, 230-38 (1983) (evaluating the use of confidential informants to support probable cause and proscribing a "flexible," "totality-of-the-circumstances" analysis). But the case at bar differs from the hypothetical in the crucial respect that the agents did not stop Bullard until after they, the agents, had actually observed a completed cocaine transaction in which Bullard reasonably appeared to participate. They did not rely on the informant to establish that Berry was offering cocaine for sale – they had observed three prior transactions, and heard Berry discuss this one on the telephone. They did not rely on the informant to establish the reasonable probability that Bullard had brought the cocaine to the house – they heard Berry repeatedly aver that the cocaine was not there yet, and then, immediately upon Bullard's arrival at the house, telephone the informant to report that the cocaine had arrived. This is simply not a case in which the government's search was based on questionable informant testimony.[1] The agents saw for themselves all that they needed to see.

_____

[1] We thus disagree with Bullard's contention that "[o]ther than the Informant's statement [that he saw Berry give some of the buy money to Bullard] there was not one scintilla of evidence" justifying the search of Bullard and his car. (*See* Appellant's Br. at 9). It is true that because the agents had only audio surveillance of the transaction, they did not observe Berry giving the money to Bullard. But the informant's statement was not the only evidence linking Bullard to the transaction, nor was it the informant's "naked word." (*Id.* at 10.) The firsthand observation by the agents of the sequence of events described above is sufficient to establish probable cause, and places the informant's statement in an objectively verifiable factual context.

5

B.

Second, Bullard argues that the court erred by admitting testimony from Berry about prior drug transactions between Berry and Bullard. Under Federal Rule of Evidence 404(b), evidence of prior bad acts may not be introduced to show propensity to commit further bad acts. However, the rules permit introduction of such evidence for a number of purposes, including "to show criminal intent and the absence of innocent association." *United States v. Butch*, 256 F.3d 171, 177 n.5 (3d Cir. 2001). We review 404(b) admissibility determinations for abuse of discretion. *Id.* at 175.

In this case, one of the counts was conspiracy. In a conspiracy case, the government must prove an agreement between two or more people to commit an illegal act. The charges necessarily involve a relationship of some sort; whether that relationship constitutes a criminal conspiracy depends upon what the people involved said and did with one another. Upon his arrest, Bullard explained the presence of the marked cash to the agents who stopped him by stating that he had sold Berry some cable boxes.[2] The nature of the relationship between Bullard and Berry is thus precisely what the government had to prove. Berry's testimony, which detailed that relationship and negated the possibility of innocent association, was therefore offered for a permissible purpose under Rule 404(b).

---

[2]At trial, he testified that Berry had given him the money to buy Berry a car.

6

If the purpose for its introduction is permissible, then relevant prior bad acts evidence will be admissible if "its probative value . . . outweigh[s] its potential for unfair prejudice," and if "the court . . . charge[s] the jury to consider the evidence only for the limited purposes for which it is admitted." *United States v. Givan*, 320 F.3d 452 (3d Cir. 2003). Both of these requirements are met here.

The probative value of establishing the prior relationship between Berry and Bullard significantly outweighs any unfair prejudice to Bullard that might ensue from its introduction. Indeed, there appears to be no unfair prejudice here at all. The relationship between Berry and Bullard is part of the conspiracy charge, so Bullard is not unfairly prejudiced with respect to that charge by having the relationship exposed. The relevant prejudice is not simply the tendency to hurt the defendant's case, but rather the tendency to hurt the defendant's case for reasons not relevant to the charge. Thus if Berry had testified, for example, that his relationship with Bullard included prior bad acts having nothing to do with drugs, but which were widely viewed with moral disapprobation, then unfair prejudice might be in issue. But it does not arise in a case in which the testimony goes plainly, and solely, to the existence of the relationship at the heart of the conspiracy charge. We have repeatedly upheld prior bad acts evidence under Rule 404(b) in such circumstances. *See United States v. Givan*, 320 F.3d 452 (3d Cir. 2003); *United States v. Cross*, 308 F.3d 308 (3d Cir. 2002); *United States v. Boone*, 279 F.3d 163 (3d Cir. 2002);

7

*United States v. Vega*, 285 F.3d 256 (3d Cir. 2002); *United States v. Butch*, 256 F.3d 171 (3d Cir. 2001).

The final condition for 404(b) admissibility was met when the District Court gave the jury a careful limiting instruction on the scope and limits of the inferences that could be permissibly drawn from Berry's testimony, as follows:

> I must stress to you that you may not consider this evidence [to be] any reflection on the defendant's character or his propensity to commit the crimes charged in the indictment. The evidence that is being offered is evidence that the defendant engaged in prior cocaine transactions [and] may be considered by you only to the extent that it bears upon Mr. Bullard's knowledge of selling drugs, and how it bears upon his relationship with Mr. Berry, and whether Mr. Bullard trusted Mr. Berry, Mr. Bullard's knowledge regarding the crimes charged, his intent to commit the crimes charged, and to rebut any claim of lack of intent.

App. 202.

Because Berry's testimony was relevant to the charge, was introduced for a permissible purpose, was accompanied by a limiting instruction, and did not entail unfair prejudice greater than its probative value, it was admissible under 404(b).

C.

Bullard's third issue on appeal is that there was insufficient evidence to sustain a guilty verdict. He failed to raise this issue at trial, so we apply a plain error standard of review. *United States v. Powell*, 113 F.3d 464, 466-67 (3d Cir. 1997).

There was no plain error here. There was ample evidence upon which a reasonable jury could base a verdict of guilty beyond a reasonable doubt. Contrary to

8

Bullard's contention, the government's case was not based on a "mud against the wall theory," in which all the evidence of criminality points solely to Berry, and Bullard was guilty only by association with Berry. The evidence against Bullard was not his association, simpliciter, with Berry, but rather the marked cash he was carrying, the gun in his car, the fact that his arrival at Berry's house coincided with Berry's call to the informant to let him know that the cocaine had finally arrived, and detailed testimony from Berry about the existence of the conspiracy between Bullard and Berry and the repeated transactions in which they had been involved. At trial Bullard cross-examined Berry, and took the stand to tell his side of the story. If the jury believed Berry and not Bullard, that is a credibility determination which is solely for the jury to make.

D.

Finally, no remand is necessary under *United States v. Booker*, 125 S. Ct. 738 (2005), and *United States v. Davis*, 407 F.3d 162 (3d Cir. 2005). Bullard was sentenced to the statutory minimum sentence of 240 months – the lowest possible sentence he could receive as a convicted drug offender with a prior felony conviction. The statutory mandatory minimum was above the Sentencing Guidelines range, which was 188-235 months. Guidelines or no guidelines, the judge simply could not go any lower pursuant to the statute under which Bullard was convicted.[3]

---

[3]We should note that the "substantial assistance" and "safety valve" provisions of Title 18, 18 U.S.C. §§ 3553(e) and (f), are not applicable here. Under § 3553(e), "the court shall have the authority to impose a sentence below the level established by statute

In *Davis*, we identified two potential sources of sentencing error following *Booker*. District courts might base sentences on facts neither admitted by the defendant nor found by the jury, or district courts might treat the guidelines as mandatory rather than advisory. 407 F.3d at 163-64. Because of the difficulty of demonstrating prejudice on appeal, we held that defendants sentenced under the pre-*Booker* mandatory guidelines regime did not need to show prejudice. Instead we decided to remand all pre-*Booker* guidelines sentences for re-sentencing in the new advisory regime. *Id.* at 165. When there is uncertainty as to the effect of the guidelines on the sentence, in other words, we presume prejudice and remand.

*Davis* did not, however, mandate remand where there is no such uncertainty. In *United States v. Hill*, 411 F.3d 425 (3d Cir. 2005), we declined to remand under *Davis* where the district court had "clearly indicate[d] that an alternative sentence would be identical to the sentence imposed under the Guidelines." *Hill*, 411 F.3d at 426.[4]

---

as a minimum sentence," but only "upon motion of the Government," and only "so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person." Here the Government did not make such a motion, nor did Bullard provide any assistance. Under § 3553(f), the court may also impose a sentence below the statutory mandatory minimum, but only if the court makes several enumerated findings at sentencing, including that "the defendant did not . . . possess a firearm . . . in connection with the offense," that the defendant "was not engaged in a continuing criminal enterprise," and that "the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct . . ." The District Court made no such findings here, nor could it have on the facts of this case.

[4]In *Hill*, there was also no question of factfinding at sentencing. The court "based [the sentence] solely on [the defendant's] criminal history and the factual stipulations

In this case, Bullard's sentence was based entirely on his conviction by the jury of conspiracy to distribute cocaine base. Under 21 U.S.C. § 846, "[a]ny person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those proscribed for the offense, the commission of which was the object of the attempt or conspiracy." Here the underlying offense is given in 21 U.S.C. §§ 841(a)(1) and (b)(iii): "[I]t shall be unlawful for any person knowingly or intentionally to possess with intent to . . . distribute . . . 50 grams or more of a mixture or substance . . . which contains cocaine base." The statutorily prescribed penalty is given in § 841(b). For possession with intent to distribute 50 grams or more of a mixture containing cocaine base, the minimum sentence is "not more than 10 years," and where the defendant has "a prior conviction for a felony drug offense, such person shall be sentenced to a term of imprisonment which may not be less than 20 years."

Bullard did have a prior conviction for a felony drug offense, and the fact that he had such a conviction was submitted to and specifically found by the jury.[5] A minimum sentence of 20 years was therefore required based solely on the facts found by the jury and the command of the statute.

---

contained." 411 F.3d at 426.

[5]App. 615-16 ("Do you unanimously agree by proof beyond a reasonable doubt that the defendant committed the offense of conspiracy to possess with intent to distribute more than 50 grams of cocaine base, as charged in Count 1 of the indictment, after having been convicted of a felony drug offense prior to July 10th, 2001? – Yes, we do.").

11

This situation is analogous to the one we faced in *Hill*. In *Hill*, the sentence would have been exactly the same under non-binding guidelines. In this case, though we cannot say that a new sentence imposed in the light of *Booker* would be identical, it is certain that as a matter of law it could not be any lower.[6] The principle is therefore the same: sentencing under a mandatory guidelines regime can have occasioned no possible prejudice to Bullard.[7]

IV.

Because we discern no error in Bullard's conviction or sentence, we will affirm the judgment of the District Court.

---

[6]The District Court explained the statutory requirements to Bullard at the sentencing hearing. "Well, the Court can't downwardly depart because there is a mandatory minimum, and the statute says that you have to receive at least a particular sentence. So there is no such thing as a downward departure here. . . . The statute tells me that I have to give you at least 240 months." App. 634. The District Court further explained that the Sentencing Guidelines had nothing to do with determining the sentence. "The guidelines are I think 188 to 235 months. That's not what determines your sentence in this case. What determines the sentence in this case is the statute. . . . The statute is a mandatory minimum of 240 months." Indeed, because the guidelines range was below the statutory minimum, under a mandatory guidelines regime any sentence above 20 years would have been an upward departure necessitating a variety of specific factual findings. *See* U.S. Sentencing Guidelines Manual § 5.K.2. In the new advisory regime, however, a sentence on remand could go as high as life, subject only to review for "reasonableness."

[7]We do not need to reach the question whether *Booker* contemplates harmless error analysis, because there was no error in this case. As the District Court explained at the sentencing hearing, Bullard's sentence was not calculated with reference to the guidelines, because the statutory minimum was above the guidelines range. Because this was not a guidelines sentence but a purely statutory one, *Booker* is not implicated.

12