

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-15-2006

# USA v. Aldea

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-2305

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"USA v. Aldea" (2006). *2006 Decisions*. Paper 1429.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1429

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 04-2305, 04-2472, 04-3335, 04-3405

_____

UNITED STATES OF AMERICA

v.

JORGE ALDEA,
a/k/a FAT GEORGE,

Jorge Aldea,
Appellant in No. 04-2305
*(D.C. Criminal No. 03-cr-00014-2)*

_____

UNITED STATES OF AMERICA

v.

NAYDIA ROJAS,

Appellant in No. 04-2472
*(D.C. Criminal No. 03-cr-00014-3)*

_____

UNITED STATES OF AMERICA

v.

MARILYN I. ROJAS,

Appellant in No. 04-3335
*(D.C. Criminal No. 03-cr-00014-4)*

*(continued)*

_____

UNITED STATES OF AMERICA

v.

MAURICIO ROJAS
a/k/a Maurice Rojas,

Appellant in No. 04-3405
*(D.C. Criminal No. 03-cr-00014-1)*

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal No. 03-cr-00014)
District Judge: Honorable Stewart Dalzell

_____

Submitted Under Third Circuit LAR 34.1(a)
January 26, 2006

Before: RENDELL and SMITH, Circuit Judges,
and IRENAS*, District Judge

(Filed March 15, 2006)


_____

OPINION OF THE COURT
_____



_____

    *  Honorable Joseph E. Irenas, Senior Judge of the United States District Court for
    the District of New Jersey, sitting by designation.


2

RENDELL, <u>Circuit Judge</u>.

Appellants Jorge Aldea, Mauricio Rojas, Naydia Rojas[1] and Marilyn Rojas[2] were convicted, after a jury trial, on a one-count indictment for conspiracy to distribute in excess of five kilograms of a mixture or substance containing a detectable amount of cocaine, in violation of 21 U.S.C. § 846.

On appeal, they challenge various aspects of the trial and their sentencing proceedings, collectively raising ten issues. We address these issues in turn, and conclude that none of them rises to the level of reversible error. We will accordingly affirm the convictions. We will vacate Jorge Aldea's sentence and remand for resentencing in light of *United States v. Booker*, 543 U.S. 220 (2005).

Because the parties are familiar with the facts of the case, we address them only as they are relevant to the issues discussed.

## I. Evidentiary Rulings

Mauricio and Naydia Rojas argue that the District Court improperly admitted evidence that it should have excluded under Federal Rule of Evidence 403. Mauricio's claim relates to evidence of Mario Rojas's arrest and escape from prison, while Naydia's

---

[1]The briefs refer to Naydia Rojas as "Nayda" Rojas. Because her Judgment and Conviction in the District Court and her appeal list her as "Naydia," we refer to her by that name here.

[2]The briefs refer to Marilyn Rojas as "Marylan" Rojas. Because her Judgment and Conviction in the District Court and her appeal list her as "Marilyn," we refer to her by that name here.

claim arises out of Henry Sanabria's testimony that he shot another member of the drug conspiracy. Ordinarily, we review a District Court's Rule 403 analysis for abuse of discretion, and accord great deference to the District Court's ultimate decision. *Brown v. SEPTA* (*In re Paoli R.R. Yard PCB Litig.*), 113 F.3d 444, 453 (3d Cir. 1997). To justify reversal, the District Court's Rule 403 decision must be "arbitrary or irrational." *Id.* Because Naydia made no motion *in limine* to exclude the testimony she challenges, and failed to object at trial, we review her claim for plain error. Fed. R. Crim. P. 52(b).

The District Court did not abuse its discretion in admitting the evidence regarding Mario Rojas's arrest and subsequent escape from police custody. At trial, Anibal Cruz, a cooperating government witness, testified that he, Mauricio, Naydia, Jorge Aldea and another individual met after Mario's arrest to plan what they would do next. Cruz also testified that, after Mario escaped, Cruz transported him to Mexico where the two subsequently met with Naydia Rojas and Mauricio Rojas to plan additional drug transactions. Evidence of Mario's arrest and escape in conjunction with the evidence about the two meetings demonstrated the defendants' continuing and active engagement in the conspiracy. Thus, the District Court's decision to admit it was neither arbitrary nor improper. *Cf. United States v. Rosenthal*, 793 F.2d 1214, 1244 (11th Cir. 1986) (affirming the district court's decision to admit evidence of conspirator-defendant's attempted escape from prison where the evidence proved defendant's continuing, active involvement in a drug smuggling operation).

4

Nor did the District Court err in allowing Sanabria, a cooperating witness, to testify about shooting Torres, the alleged conspiracy's bookkeeper. Although we have not addressed this specific issue, other courts of appeals have held that admission of evidence of murder, or attempted murder, to prove the existence of drug conspiracies and explain the relationships of the co-conspirators is not an abuse of discretion. *See United States v. Soto-Beniquez*, 356 F.3d 1, 32 (1st Cir. 2004); *United States v. Baptiste,* 264 F.3d 578, 590 (5th Cir. 2001); *United States v. Terzado-Madruga,* 897 F.2d 1099, 1118-19 (11th Cir. 1990). The evidence regarding Torres's attempted murder was highly relevant to authenticate the ledger that Torres used to keep track of the conspiracy's activities and to explain why, despite the ongoing conspiracy, there were no entries in the drug ledger after November 14, 1997. Under these facts, we cannot say that the District Court's decision to admit the evidence regarding Torres's attempted murder amounted to plain error.

## II. Other Trial Issues

Naydia Rojas and Jorge Aldea challenge various testimonial rulings that the District Court made at trial. We review these rulings for abuse of discretion. *United States v. Chandler,* 326 F.3d 210, 219 (3d Cir. 2003).

Naydia Rojas argues that the District Court erred in restricting the cross-examination of Wilberto Casillas regarding the underlying facts of an unrelated pending murder charge. More specifically, she claims that the District Court should not have

prohibited cross-examination regarding the facts supporting Casillas's claim on direct examination that he was innocent of the unrelated murder charge. Trial judges retain wide latitude to impose reasonable limits on cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness's safety or interrogation that is repetitive or only marginally relevant. *Id.* The District Court's decision to limit cross-examination of a cooperating witness is not an abuse of discretion as long as it does not significantly inhibit the defendant's effective exercise of his or her right to inquire into the witness's motivation for testifying. *Id.*

Here, the District Court allowed the defendants to cross-examine Casillas extensively with respect to the open murder charge. Defendants asked Casillas about his upcoming murder trial in state court, and he testified that the events surrounding the murder transpired in 1994 and that the murder trial was a capital case with the possibility of a death sentence or at least life in prison. Defendants also questioned Casillas about his guilty plea to federal drug charges in May 2003, and he noted that he faced a mandatory minimum sentence of 20 years imprisonment on that charge due to the fact that he had a prior drug conviction. The District Court did not abuse its discretion because it did not significantly inhibit Naydia's right to inquire into the witness's motivation for testifying.

Jorge Aldea argues that the District Court erred in allowing the prosecutor to improperly and speculatively argue that the drug ledger admitted into evidence at trial

6

corroborated Sanabria's testimony. We reject this argument and find that the District Court correctly overruled Aldea's objections, as the prosecutor's statements were based on evidence admitted at trial. *See United States v. LeFevre*, 483 F.2d 477, 479 (3d Cir. 1973) (adopting Standard 5.9 of the ABA Prosecution Standards, which states that it is unprofessional conduct for the prosecutor to intentionally refer to or argue on the basis of facts outside the record). In his closing argument, the prosecutor referred only to portions of the ledger that were properly in evidence. Sanabria, a government witness, testified that he was with Javier Torres when he bought the ledger, at which time Torres stated that it would be used to record drug transactions. Sanabria also identified Torres's handwriting and testified that he observed Torres write in the ledger. Furthermore, the police found the ledger in a briefcase with a money counter and more than $69,000 in cash while performing a legal search at Mario Rojas's home. This evidence is sufficient to directly and circumstantially authenticate the drug ledger, *see United States v. Echeverri*, 982 F.2d 675, 679-80 (1st Cir. 1993), and allow its admission at trial as a business record; the Court did not abuse its discretion in allowing the prosecutor to comment on it.

We would reach the same result even if we were to conclude that the prosecutor's statements were improper. The District Court ultimately decided not to send the ledger to the jury room because part of the ledger was in Spanish and had not been translated into

English at trial. It then instructed the jury, in writing,[3] to disregard any references to the ledger that the prosecutor had made during his closing argument. Because "a jury is presumed to have followed the instructions the court gave it," *United States v. Givan*, 320 F.3d 452, 462 (3d Cir. 2003), any prejudice that might have resulted from improper references to the ledger was cured.

### III. Jury Instructions

Mauricio and Naydia Rojas raise several objections to the jury instructions given at trial. We consider whether, in light of the evidence, the jury charge as a whole fairly and adequately submitted the issues in the case to the jury. *United States v. Zehrbach*, 47 F.3d 1252, 1264 (3d Cir. 1995). Where the defendant objects to the District Court's choice of language, we review the instruction for abuse of discretion. *Id*. Because Naydia did not raise her objections at trial, we review them for plain error. Fed R. Crim. P. 52(b); *Gov't of the Virgin Islands v. Mujahid*, 990 F.2d 111, 116 (3d Cir. 1993).

Mauricio Rojas argues that the District Court erred because it declined to use the precise language he requested when it instructed the jury as to how to evaluate the credibility of the government witnesses that testified pursuant to a plea agreement. We have held that a general instruction directing the jury to consider the motives of the

---

[3] Aldea also argues that the District Court erred in giving the jury a written, rather than oral, curative instruction regarding the drug ledger. However, none of the appellants requested the District Court to read the curative instruction aloud in open court. We do not think that the District Court's decision to give the jury a written curative instruction amounts to plain error.

speaker in light of the circumstances of the case adequately puts the jury on notice that it must carefully weigh such testimony. *United States v. Isaac*, 134 F.3d 199, 204-05 (3d Cir. 1998). Although the District Court refused to instruct the jury in detail on the specific benefits that the cooperating witnesses would receive under the Sentencing Guidelines, it did instruct the jury to consider the credibility of their testimony:

> In considering these witness' testimony, you should bear in mind that a witness who has entered into a plea agreement has an interest in this case different from an ordinary witness's. A witness who realizes he may be able to obtain his own freedom, or receive a lighter sentence by giving testimony favorable to the prosecution, has motive to testify falsely. Therefore, you must examine his testimony with caution and weigh it with great care.

The above charge fairly and adequately instructed the jury as to how to evaluate the credibility of the government's two cooperating witnesses. Furthermore, the plea agreements of both cooperating witnesses were in evidence and defense counsel had the opportunity to argue the terms of the agreements and any inferences to be drawn therefrom. Thus, the District Court's jury instruction regarding cooperating witness credibility was not an abuse of discretion.

Naydia Rojas argues that the District Court failed to protect her against a determination of guilt by association because it failed to deliver a cautionary instruction *sua sponte* when government witnesses made references to the "Rojas organization" or "the Rojas family" and because it allowed the prosecutor to speak about "family trust" during his closing argument.

Neither the District Court's failure to issue a cautionary instruction *sua sponte*

9

after the few, isolated instances that a government witness referenced the "Rojas family" or the "Rojas organization," nor the prosecutor's mention of "family trust" in his closing argument was plain error. The jury is entitled to consider all of the evidence, including family association, to determine whether the government proved its case. Although a jury may not find a party guilty based on family association alone, it may consider and draw reasonable inferences from such facts. *United States v. Brodie*, 403 F.3d 123, 151 (3d Cir. 2005). The few statements that Naydia cites to support her claim do not amount to an improper attempt to convict her of guilt by association alone. Government witnesses made several isolated, generic references to the "Rojas organization" or the "Rojas family" without identifying a specific individual. However, the prosecutor quickly followed up by requesting the witnesses to identify the specific individual about whom they were testifying. In the closing argument, the prosecutor mentioned "family trust," but explained the basis for each defendant's liability separately.

Moreover, the District Court cured any error that may have resulted from these statements through its instructions. At the trial's outset, the District Court instructed the jury to consider the evidence against each defendant individually, stating that proof as to one defendant may or may not be proof as to another defendant. At the conclusion of the trial, the District Court again instructed the jury that the evidence against each defendant must be considered individually and that the family relationship alone was not sufficient evidence of guilt. The District Court did not commit plain error, as the statements

10

admitted into evidence did not prejudice Naydia, and the Court adequately instructed the jury on this issue.

Naydia Rojas also argues that the District Court's instruction to consider evidence against each defendant separately to determine whether he or she participated in the conspiracy was undermined by its later instruction that each member of a conspiracy is liable for all acts by a co-conspirator in furtherance of the conspiracy. The instructions accurately reflected the law, which requires the jury to consider the evidence against each defendant independently to determine whether he or she participated in the conspiracy, but also holds each participant liable for the actions of co-conspirators when such actions are undertaken in furtherance of the goals of the conspiracy. *See Pinkerton v. United States*, 328 U.S. 640, 645-48 (1946). The disputed instructions were not given one after another, but rather placed in their proper contexts–the instruction regarding the compartmentalization of evidence was given as part of the instructions on the elements of the offense, while the co-conspirator liability instruction was given as part of the instructions on conspiracy law generally. When viewed as a whole, the jury instructions stated the law correctly and were capable of being understood by the jury. Thus, the jury instructions were not plainly erroneous.

## IV. Sufficiency of the Evidence

Appellant Marilyn Rojas argues that there was insufficient evidence for the jury to find that she was knowingly involved in a drug conspiracy. When deciding whether a

11

jury verdict rests on legally sufficient evidence, we review the evidence in the light most favorable to the government, and sustain the verdict if any "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Dent*, 149 F.3d 180, 187 (3d Cir. 1998).

A rational trier of fact could find, beyond a reasonable doubt, that Marilyn Rojas knew that drug distribution was the object of the conspiracy. Marilyn cites several cases in which we held that the evidence was insufficient to support a finding that the defendant participated in a drug conspiracy. In each of those cases, however, the defendant participated in a single isolated incident related to the conspiracy, and had no prior relationship to the other co-conspirators. *See, e.g., United States v. Cartwright*, 359 F.3d 281, 286 (3d Cir. 2004) (defendant acted as the lookout during an undercover purchase of cocaine from alleged co-conspirator); *United States v. Idowu*, 157 F.3d 265, 268-69 (3d Cir. 1998) (defendant carried bag with money during undercover sale of drugs to co-defendant); *United States v. Thomas*, 114 F.3d 403, 405-06 (3d Cir. 1997) (defendant went to hotel to pick up a bag that contained cocaine; there was no evidence that defendant had any prior relationship with alleged co-conspirators). In this case, by contrast, the evidence established multiple instances of Marilyn Rojas's participation in activities that furthered the conspiracy's drug distribution purposes. For example, on February 3, 1999, Marilyn Rojas, Naydia Rojas, Wilberto Casillas, and Wayne Langjahr traveled to New York, at Mario Rojas's direction, to receive a delivery of 20 kilograms of

12

cocaine. Casillas testified that Marilyn was in the apartment when he arranged by telephone to pick up the shipment of cocaine. Marilyn Rojas also falsely posed as Sanabria's girlfriend to rent a house that other members of the conspiracy used to store and distribute cocaine. In addition, Marilyn Rojas went with her siblings Naydia and Mario to purchase women's workout clothes which her mother, while in Marilyn's home, modified to conceal money. This evidence, in conjunction with her ongoing relationships with at least four members of the conspiracy, permitted the jury to draw a reasonable inference that Marilyn Rojas knew that the purpose of the conspiracy was to distribute drugs. We will accordingly reject Marilyn's sufficiency of the evidence claim.

### V. Statute of Limitations

Jorge Aldea argues that the prosecution instituted against him on May 28, 2003 violated the five-year statute of limitations because his involvement in the conspiracy ended by May 28, 1998. Because this is an argument of law which, if successful, would require a judgment of acquittal, *see United States v. Antar*, 53 F.3d 568, 579 (3d Cir. 1995), *overruled on other grounds by Smith v. Berg*, 247 F.3d 532, 534 (3d Cir. 2001), we review the District Court's ruling *de novo*.

The five-year statute of limitations in a drug conspiracy case does not begin to run until the conspirator withdraws from the conspiracy. *Id.* at 582. Mere cessation of activity in a conspiracy is not sufficient to establish withdrawal. To prove withdrawal, the *defendant* must present evidence of some affirmative act of withdrawal, typically

13

either a full confession to authorities or a communication to co-conspirators that he has abandoned the criminal enterprise and its goals. *United States v. Steele*, 685 F.2d 793, 803-04 (3d Cir. 1982).

Aldea has presented no evidence that he withdrew from the conspiracy before May 28, 1998. To the contrary, a government witness testified that Aldea and other co-conspirators met in *September* of 1998 to discuss the inability of the organization to continue drug distributions without Mario Rojas. Thereafter, they made plans to assist Mario's escape from prison. Aldea's claim that the charges against him were time-barred thus lacks merit.

## VI. Sentencing

Jorge Aldea argues that his sentence of 280 months imprisonment exceeded the maximum possible sentence supported by the jury verdict and, thus, violates *Blakely v. Washington*, 542 U.S. 296 (2004), and *United States v. Booker*, 543 U.S. 220 (2005). He also argues that, because he committed his offense before the Supreme Court decided *Booker*, the Ex Post Facto clause prevents imposition of a sentence that includes any enhancement. Having determined that *Booker* issues are best resolved by the District Court in the first instance, we will vacate his sentence and remand for resentencing in accordance with that opinion. *Cf. United States v. Naovasaisri*, 150 F. App'x 170, 176 (3d Cir. 2005); *United States v. Davis*, 407 F.3d 162, 165 (3d Cir. 2005) (en banc).

Marilyn Rojas also argues that her sentence of 120 months, the statutory minimum

14

under 21 U.S.C. § 846, was improper in light of *Booker*. Because she was sentenced to the statutory minimum, however, it is clear as a matter of law that there is no basis upon which the District Court could grant her a lower sentence after *Booker*. *See United States v. Bullard*, No. 04-1632, 2005 WL 3409603, at * 5 (3d Cir. Dec. 13, 2005). We will therefore deny Marilyn's challenge to her sentence.

## VII. Conclusion

Because we conclude that none of the issues on appeal rises to the level of reversible error, we will affirm the appellants' convictions. We will vacate Jorge Aldea's sentence and remand for consideration of the appropriate sentence by the District Court.

_____