**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-4201
_____

UNITED STATES OF AMERICA

v.

DUMAR COMBS,

Appellant

_____

On Appeal from the United States District Court for the
Eastern District of Pennsylvania
(D.C. No. 2:15-cr-392-MSG-1)
District Judge:  Hon. Mitchell S. Goldberg

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
December 14, 2017

Before:  CHAGARES, RESTREPO, and FISHER, Circuit Judges.

(Filed: March 6, 2018)
_____

OPINION*
_____

---

* This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

CHAGARES, Circuit Judge.

Dumar Combs ("Combs") appeals his judgment of conviction for possession of a firearm and ammunition by a convicted felon in violation of 18 U.S.C. § 922(g)(1) following a conditional guilty plea. Combs argues that the District Court erred in denying his motion to suppress evidence. We will affirm.

I.

On the evening of February 26, 2015, Philadelphia police officers interviewed a confidential informant ("the CI"). The CI told the officers that a group including Combs had used Global Positioning System ("GPS") trackers to commit robberies, burglaries, and home invasions. Combs and his associates, according to the CI, were using a rented silver Infiniti automobile with white out-of-state license plates, and after committing crimes they would return to a house on the 5600 block of Belmar Street in Philadelphia to sort through their ill-gotten gains. The CI identified the group's next target as the owner of an alcohol distributor. One of the officers, Detective Park, recognized the owner of the alcohol distributor as his brother, Mr. Park.

Detective Park called Mr. Park, who could not find a GPS device on his car. According to the CI, who claimed to understand the methods used by Combs and his associates, this meant that the robbers had removed the device and would strike that evening. The CI was correct. When Mr. Park arrived at his home, he saw "a light colored car screeching" away, and believed the burglars might still be inside. Appendix ("App.") 17. Pennsylvania state police officers arrived at Mr. Park's house to find the door forced open and the house ransacked. Mr. Park provided the Pennsylvania state

2

police with a list of items that had been stolen, which included bottles and cases of alcohol.

In the early hours of February 27, 2015, the Philadelphia police officers drove up to the 5600 block of Belmar Street, where they pulled over a silver Infiniti with white Florida license plates. The officers ordered Combs, who had been driving the car, and his passenger, Wudeeah Barber ("Barber"), to exit the car. Combs identified himself and gave his address as 5637 Belmar Street ("Combs' house"), located on the block where the CI said the robbers would gather after robberies.

One of the Philadelphia police officers told Barber that "she need[ed] to be escorted to" the police station. App. 18. Barber responded that she could not go to the police station because Combs' four year old daughter was home alone at Combs' house. Combs and Barber were detained, while officers went to Combs' house.

Arriving at Combs' house, the officers knocked and announced their presence, but no one answered. The officers "surround[ed] the house because [they were] holding the house for a search warrant" while another detective prepared the search warrant. App. 21. Detective Slobodian of the Philadelphia police department walked around the house and observed that lights were on inside the house and music was playing. He and other officers forced the door and entered the house to look for the four year old child. On the first floor they observed in plain view unopened boxes of liquor as well as children's toys, and they smelled marijuana. Continuing to search the upstairs, Detective Slobodian observed "a magazine and a firearm" sticking out of an open drawer in one of the bedrooms. App. 57. The officers reported back to the detective preparing the warrant

3

that they had observed the liquor when they searched the house for the child, and the detective included that information in the search warrant application. Detective Slobodian did not mention the gun to the detective preparing the search warrant until after the search warrant was issued.

Later, Philadelphia police obtained and executed a search warrant for Combs' house. In the drawer of the upstairs bedroom, police recovered a handgun with 11 rounds of ammunition and an extended magazine with 31 rounds of ammunition.

Combs was charged with possession of a firearm and ammunition by a convicted felon in violation of 18 U.S.C. § 922(g)(1). The District Court denied Combs' motion to suppress the handgun as the fruit of an illegal search.[1] Combs subsequently entered a conditional guilty plea under which he reserved the right to appeal from the District Court's denial of his motion to suppress. The District Court sentenced Combs to 31 months of imprisonment, and this appeal timely followed.

II.[2]

---

[1] At the suppression hearing, the Government gave an extensive proffer of facts, to which both the Government and Combs stipulated. Combs qualified one element of his stipulation: while he conceded that, if called, the officers would testify that Barber said Combs had a four year old daughter alone at home, he did not concede that Barber actually said that before police entered Combs' home. The District Court found the officers' proffered testimony credible, and found that Barber did, in fact, tell the officers that a four year old child was alone in the house before she was taken to the police station. On appeal, Combs does not challenge the content of the proffered evidence or the District Court's factual findings.

[2] The District Court exercised jurisdiction under 18 U.S.C. § 3231. We exercise jurisdiction under 28 U.S.C. § 1291. We review the denial of a motion to suppress for clear error as to the underlying facts, but exercise plenary review over questions of law. United States v. Givan, 320 F.3d 452, 458 (3d Cir. 2003).

4

On appeal, Combs argues that Detective Slobodian violated his Fourth Amendment rights by entering his home before obtaining a search warrant, and therefore that the firearm first observed in that initial entry must be suppressed. Combs argues that the exigent circumstances exception does not apply because the Philadelphia police officers manufactured the exigency by wrongfully detaining Combs and Barber. The Government responds that the search was lawful and, regardless, the search warrant provided an independent source for discovering the firearm. We have considered Combs' arguments and for the reasons set forth below, we will affirm.

The Fourth Amendment prohibits unreasonable searches of a person's home, and warrantless entry into a person's home is "unreasonable per se" absent a few "exceptions." United States v. Stabile, 633 F.3d 219, 230 (3d Cir. 2011) (citing Payton v. New York, 445 U.S. 573, 586 (1980)). Ordinarily, evidence discovered or seized in an unlawful search must be suppressed. See Murray v. United States, 487 U.S. 533, 536–37 (1988). Under the "independent source" doctrine, however, a court need not suppress "evidence initially discovered during, or as a consequence of, an unlawful search, but later obtained independently from activities untainted by the illegality." Id. at 537. Thus, when police search a home pursuant to a warrant obtained after a warrantless search, evidence obtained pursuant to the warrant need not be suppressed so long as: (1) a neutral magistrate would still have issued the warrant "even if not presented with information that had been obtained during [the] unlawful search;" and (2) the first, illegal, search did not prompt the officers to obtain the search warrant. United States v.

5

Herrold, 962 F.2d 1131, 1144 (3d Cir. 1992); see Stabile, 633 F.3d at 243; United States v. Perez, 280 F.3d 318, 339 (3d Cir. 2002). Both prongs are satisfied here.

A neutral magistrate may issue a warrant to search a home and seize evidence when probable cause justified the search. See United States v. Stearn, 597 F.3d 540, 554 (3d Cir. 2010). Probable cause to search a home exists when the facts demonstrate a "fair probability" that evidence of a crime can be found in the home. Id. (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)). Determinations of probable cause are fact-specific, and "turn[] on the assessment of probabilities in particular factual contexts." Gates, 462 U.S. at 232.

An informant's tip is sufficient to establish probable cause "when facts demonstrating both the informant's basis of knowledge and his credibility are specified in the officer's affidavit." United States v. Bush, 647 F.2d 357, 362 (3d Cir. 1981); see Spinelli v. United States, 393 U.S. 410, 413 (1969); Aguilar v. Texas, 378 U.S. 108, 114 (1964). An informant's tip, by itself, may be sufficient to support probable cause when "the tip was corroborated in significant part by independent police investigation." Stearn, 597 F.3d at 556–58; see Gates, 462 U.S. at 245; Bush, 647 F.2d at 362.

As for the first prong of the independent source test, the warrant application contained two pieces of information learned during Detective Slobodian's initial search: the presence of crates of alcohol and the smell of marijuana. Even without that information, the warrant application presented the magistrate with an ample basis for probable cause to search Combs' house. The warrant application included the CI's tip that Combs was involved in a string of robberies and that he used his home as a post-

6

crime rendezvous point. The CI's tip was reliable because other aspects of his tip — that Mr. Park would be robbed, that Combs drove a silver Infiniti with white, out-of-state license plates, and that Combs would return to the 5600 block of Belmar Street after the robbery — had been independently corroborated. Therefore, his identification of Combs as the perpetrator of the robbery of Mr. Park's home, and of Combs' house as a location which would contain evidence of that crime, was sufficiently reliable to establish probable cause. See, e.g., Gates, 462 U.S. at 245; Stearn, 597 F.3d at 556–58.

As for the second prong, law enforcement had planned to search Combs' house before Detective Slobodian's initial entry. Before Detective Slobodian entered the home, an officer was already "in the process of preparing" a search warrant. App. 21. Moreover, given the corroborated tip that identified Combs' house as the rendezvous point of a home invasion committed by Combs earlier that night, "it seems impossible that the police would not have applied for a warrant to search" Combs' house. See United States v. Price, 558 F.3d 270, 282 (3d Cir. 2009).

Both prongs of the independent source test are met here, and the District Court correctly held that the evidence Combs seeks to suppress was discovered and seized pursuant to an independent source — the valid warrant. Thus, even assuming that the Detective Slobodian's initial search was unlawful, the District Court did not err in denying Combs' motion to suppress because the independent source doctrine provided an exception to the exclusionary rule.

### III.

For the foregoing reasons, we will affirm the judgment of the District Court.