**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 23-1497

_____

UNITED STATES OF AMERICA

v.

NOAH LANDFRIED,
Appellant

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2-19-cr-00008-001)
District Judge: Honorable J. Nicholas Ranjan

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
April 18, 2024

Before: HARDIMAN, SMITH, and FISHER, *Circuit Judges*.

(Filed: April 23, 2024)

_____

OPINION[*]

_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

HARDIMAN, *Circuit Judge.*

Noah Landfried appeals his judgment of sentence, claiming the District Court erred in calculating the total drug weight for which he was responsible under the United States Sentencing Guidelines. We will affirm.

I

Soon after he was released in 2017 from a prison sentence for conspiring to distribute thousands of pounds of marijuana, Landfried built a vast drug-trafficking empire in western Pennsylvania that distributed heroin, fentanyl, oxycodone, and K2. He worked closely with various co-conspirators, including James Perry, who was responsible for diluting, repackaging, and delivering Landfried's cocaine. With the assistance of Michel Cercone, a licensed realtor, Landfried used some of his drug proceeds to buy residential properties which he then rented to friends or used to store drugs.

After a federal investigation uncovered evidence of Landfried's criminal enterprise, he was indicted for conspiracy to distribute and possess with intent to distribute Schedule I, II, and III controlled substances, in violation of 21 U.S.C. § 846; conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h); and possession with intent to distribute and distribution of fentanyl and heroin, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(vi), and (b)(1)(C).

In December 2021, Landfried was tried before a jury along with Cercone and Anthony Smith, a co-conspirator who distributed K2 that he received from Landfried. The jury convicted Landfried on all counts alleged against him in the superseding

indictment.

At sentencing, Landfried objected to the drug-quantity calculation in the Presentence Investigation Report: 13,350.42 kilograms of converted drug weight based on 55 kilograms of cocaine, 92 grams of fentanyl, 100 grams of heroin, 1,252 grams of synthetic cannabinoid, and 270 grams of oxycodone. The cocaine alone accounted for 11,000 kilograms of converted drug weight. The District Court overruled Landfried's objection, which resulted in a range of 10,000 to 30,000 kilograms of converted drug weight under U.S.S.G. § 2D1.1(c)(3). That range yielded a base offense level of 34, and various enhancements resulted in a total offense level of 43. So Landfried's advisory Guidelines range was life. The District Court varied downward, sentencing him to 300 months' imprisonment followed by 10 years' supervised release. Landfried timely appealed,[1] challenging only his sentence.

II

Landfried claims the District Court erred in calculating his base offense level because the basis for its calculation lacked sufficient indicia of reliability. Landfried preserved this argument at sentencing, so we review the District Court's drug-quantity determinations for clear error. *United States v. Diaz*, 951 F.3d 148, 159 (3d Cir. 2020).

In calculating the amount of cocaine attributable to Landfried, the District Court determined the amount reasonably foreseeable to him to be 55 kilograms. *See* U.S.S.G. § 1B1.3, cmt. n.3(D). It relied on estimates provided at trial by Perry, who testified that

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

3

he observed Landfried obtain "about 35" kilograms of cocaine from one source and "anywhere from 20 to 30" kilograms from a second source. App. 401–02.

Landfried argues that Perry's testimony "was suspect at best and greatly exaggerated at worst." Landfried Br. 21. He emphasizes that Perry: (1) accepted responsibility for only five kilograms of cocaine in his plea agreement; and (2) admitted he was seeking leniency in exchange for his testimony. Landfried's counsel cross-examined Perry extensively about both issues, but the District Court concluded that Perry's estimates were reliable. It did not err in doing so. As the District Court persuasively reasoned, "[t]here is nothing inconsistent with . . . Perry admitting responsibility for a minimum amount of cocaine that falls below the testimony he later provided," as plea bargains can "simply reflect the relative risks as to the strength or weakness of the evidence had the case gone to trial." *United States v. Landfried*, 2022 WL 3370041, at \*4 & n.2 (W.D. Pa. Aug. 16, 2022); *see also Brady v. United States*, 397 U.S. 742, 752 (1970) (describing the "mutuality of advantage" to plea bargaining). And the District Court's assessment of Perry's credibility is "entitled to great deference at the appellate level." *United States v. Givan*, 320 F.3d 452, 464 (3d Cir. 2003) (citation omitted). For these reasons, the District Court's conclusion was at least "plausible" and thus not clearly erroneous. *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985).

Landfried also argues that "the quantities [Perry] supplied were just 'from the top of his head' and were not based on clear facts." Landfried Br. 24. But in calculating drug quantities, "a degree of estimation is sometimes necessary." *United States v. Gibbs*, 190 F.3d 188, 203 (3d Cir. 1999); *see* U.S.S.G. § 2D1.1 cmt. n.5 ("Where there is no drug

4

seizure or the amount seized does not reflect the scale of the offense, the court shall approximate the quantity of the controlled substance."). And the District Court may rely on an estimate in this context so long as it has "sufficient indicia of reliability," which can be based on "the provision of facts and details," "corroboration by or consistency with other evidence, or the opportunity for cross-examination." *United States v. Freeman*, 763 F.3d 322, 337 (3d Cir. 2014) (citations omitted). Each of these indicia was present here.

Perry identified several customers to whom he had personally delivered cocaine—approximately 28 to 33 kilograms—for Landfried. Because this number is far lower than what Perry recalled seeing Landfried himself obtain (55 to 65 kilograms), Landfried suggests the District Court clearly erred by finding him responsible for the higher amount. But Perry explained that his estimate of the amount of cocaine he *delivered* was just a subset of the cocaine he saw Landfried *receive*. *See* App. 433 ("That's about it that I delivered to."). And Perry's estimate of the 28 to 33 kilograms he remembers delivering, together with additional estimates totaling 27 to 34 kilograms provided through the testimony of other witnesses at trial and sentencing, supports the aggregate amount of 55 kilograms found by the District Court. Not only did Landfried's counsel have the opportunity to cross-examine all of the witnesses testifying to these estimates, but he did so for almost all of them. For these reasons, the District Court's calculation of the quantity of cocaine attributable to Landfried was not clearly erroneous. Because the

55 kilograms of cocaine alone suffice to support a base offense level of 34,[2] we need not address Landfried's challenges to the District Court's other drug-quantity calculations, as any errors that may have been made as to those calculations would be harmless. *See Diaz*, 951 F.3d at 159.

*     *     *

For the reasons stated, we will affirm the judgment of the District Court.

---

[2] Applying U.S.S.G. § 2D1.1, cmt. n.8(D), 1 gram of cocaine equals 200 grams of converted drug weight, so 55 kilograms of cocaine equals 11,000 kilograms of converted drug weight—a quantity within the range of 10,000 to 30,000 kilograms for a base offense level of 34 under U.S.S.G. § 2D1.1(c)(3).